## MARSHALL EGG TRANSPORT COMPANY v. BENDER-GOODMAN COMPANY, INC.

148 N. W. (2d) 161.

January 27, 1967—No. 40,217.

*Meehl, Wiltrout & Blaufuss* and *Arthur F. Blaufuss,* for appellant.
*Glenn Catlin,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from an order of the district court dismissing plaintiff's complaint on the ground that the court had no jurisdiction over the corporate defendant. The record consists of affidavits, exhibits, motions, a court order, and memorandum, as no oral testimony was submitted.

Plaintiff, Marshall Egg Transport Company, a Minnesota corporation of Marshall, Minnesota, is in the business of transporting perishable and nonperishable produce throughout the United States. Defendant, Bender-Goodman Company, Inc., a New York corporation, does business as a broker of perishable and nonperishable produce in the United States

but has no office or agency in the State of Minnesota. The parties hereto have transacted business with each other for several years.

The Sheehan Produce Company of Iowa contracted with plaintiff's agent, Donald Haas, at Sioux City, Iowa, to transport a load of eggs from Akron, Iowa, to the United States Naval Supply Center at Bayonne, New Jersey, via refrigerated truck. Upon arrival of the eggs at their destination in May 1965 it appears that they were rejected because the temperature of the shipment did not conform with the alleged contract requirements between Sheehan and the Naval Supply Center. In an affidavit made by Mr. Haas, he states that as soon as it became known that the shipment was rejected, he notified Sheehan and was informed that the rejection was not Sheehan's responsibility and that plaintiff was then the owner of the eggs; that he told Sheehan that the shipment would be taken to defendant in New York for inspection to determine whether there was any damage or loss because of the rejection; and that he was again told it was plaintiff's responsibility and that adjustment and compensation would have to be made by plaintiff. James Sheehan, a partner in Sheehan Produce Company, in an opposing affidavit denied that he had ever advised the plaintiff or anyone connected with it that the eggs belonged to plaintiff or that it had any right to dispose of them in plaintiff's name. In any event, it appears that plaintiff's agent, Haas, contacted defendant corporation in New York and arranged to have the eggs sent there for inspection to determine whether they were merchantable. Haas claims that he told defendant that all further negotiations concerning the shipment should be made with plaintiff in Marshall, Minnesota.

R. G. Ogle, plaintiff's president, states in his affidavit that the eggs were delivered to defendant on May 18, 1965, and that Shepard Shaff, defendant's president, personally telephoned him at Marshall and stated that the eggs were grade "A" and in fine condition and that defendant would be glad to accept them; that if affiant agreed, defendant would provide storage for sale at a later date when the market would be more favorable; and that the customary advance, which in this case amounted to $3,600, would be forwarded against the load. Ogle agreed to these terms and the check was sent to plaintiff.

Shaff, in an affidavit in support of defendant's motion to dismiss, claims

that after storing the eggs for future sale he was again contacted by plaintiff's agent in Iowa, who informed him that the Sheehan Produce Company wanted an advance on the shipment. It further appears that on June 2, 1965, Shaff received a telephone call from Sheehan informing him that the eggs were Sheehan's property. The next day Shaff telephoned Ogle at Marshall that he would have to stop payment on the $3,600 check above referred to. This was done and the eggs were transferred to the Sheehan Produce Company's account.

Plaintiff brought suit, alleging in its complaint that on May 28, 1965, defendant became indebted to it in the sum of $3,600; that defendant is a corporation in the State of New York doing business in this state; and that the "contract of indebtedness" was incurred within Minnesota. Thereafter defendant, making a special appearance "so far as permitted by the Rules of Civil Procedure," moved to dismiss the action or in lieu thereof to quash the return of service of summons on the grounds that the court never acquired jurisdiction over the person of defendant.

Following a hearing the district court, after consideration of the affidavits and briefs filed by respective counsel and the files and records, ordered that defendant's motion be granted and that the action be dismissed and the summons quashed. In a memorandum accompanying its order the trial court stated that it was undisputed that defendant did not maintain an office or place of business in the State of Minnesota and had no agents or employees operating within the state. The court pointed out that under the assumed facts in this case the only basis upon which jurisdiction could be imposed on defendant was under the provisions of Minn. St. 303.13, subd. 1(3), the so-called Single Act Statute, which provides in part:

"If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed to be doing business in Minnesota by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the State of Minnesota and his successors to be its true and

lawful attorney upon whom may be served all lawful process in any actions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state * * *."

The trial court also stated that, accepting as true facts most favorable to plaintiff's position, the most that could be said was that after defendant had been approached as to whether it might be interested in purchasing the eggs, it telephoned plaintiff's office in Marshall and conveyed "over the telephone to plaintiff words which plaintiff now claims constituted an acceptance of the purchase of the eggs" and later forwarded by mail to plaintiff at its Marshall office a draft in payment of the advance as requested by plaintiff. "The telephone conversation and the mailing of the advance were the only contacts which defendant had with the state of Minnesota or anyone within its boundaries."

It was the court's position that the contact which defendant had with the State of Minnesota in this case was "not sufficient to support a policy which should require defendant to submit to the jurisdiction of the Courts of the state of Minnesota," citing Fourth N. W. Nat. Bank v. Hilson Industries, Inc. 264 Minn. 110, 117 N. W. (2d) 732. In that case our court placed stress on the specific nature of the transaction as it involved a nonresident; we distinguished those cases where the nonresident defendant was held to have been subject to the jurisdiction of the State of Minnesota and pointed out (264 Minn. 115, 117 N. W. [2d] 735):

"* * * In each instance the nonresident defendant had been the aggressor, so to speak, and had had substantial contact with the forum, invoking its protection for the privilege of doing business here. It had subjected itself to the reciprocal obligation of amenability to suit in return for the right to compete for sales in our market places. However, there is a sharp distinction between suing a nonresident seller and invoking § 303.13 against a nonresident buyer."

It was the opinion of the trial court in the case before us that the rules set out in the Hilson case applied here. The court reasoned that it would be harsh justice to require defendant to submit to the jurisdiction

538

of the Minnesota court on the basis of the meager contact of defendant with anyone in Minnesota, and that something more than what was involved in this case should exist before jurisdiction should be imposed.

It is our opinion that, in the light of the rules set out in Hilson, the reasoning of the trial court is sound and should be affirmed.

Plaintiff asserts, however, that because it had had a series of similar transactions with defendant the latter should be considered subject to the jurisdiction of the Minnesota court. The trial court disagreed with this reasoning and took the position that the question involved herein should not depend on the quantity of transactions but rather on the nature of the transaction giving rise to this controversy. We again agree with the trial court that, under the circumstances here, where a single transaction would lack the degree of participation necessary to require defendant's submission to the jurisdiction of this state, such a deficiency could not be cured merely by repeated similar transactions.

We have considered plaintiff's assignments of error and the citations referred to in its brief but must come to the conclusion under the record before us that the trial court should be affirmed.

Affirmed.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.