**McQUAY, INC., Plaintiff,**

v.

**SAMUEL SCHLOSBERG, INC.,
Defendant.**

**No. 4–70 Civ. 327.**

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 19, 1971.

Dorsey, Marquart, Windhorst, West & Halladay, by John D. Levine, and Joseph Edward Olson, Minneapolis, Minn., for plaintiff.

Robins, Davis & Lyons, by Gary H. Levinson, Minneapolis, Minn., for defendant.

NEVILLE, District Judge.

Plaintiff, a Minnesota based manufacturing corporation, in bringing this diversity action has attempted to effect service of process upon the defendant, a New York corporation, under the Minnesota long-arm statutes, Minn.Stat. §§ 303.13 Subd. 1(3) and 543.19 Subd. 1. Defendant is a heating and air conditioning contractor with its principal and only office and place of business in New York City. It is one of plaintiff's customers. The only connection it has or has had with the State of Minnesota is that it submitted a purchase order to plaintiff to buy some of its Minnesota manufactured air conditioning equipment. Defendant has no office nor agent in Minnesota, has no license to do business in Minnesota and has no telephone, address, agents or representatives in Minnesota. Defendant has never come into Minnesota to solicit any business. Rather in the instance involved in the case at bar as on previous occasions an agent for plaintiff, operating within the State of New York solicited defendant to make a purchase of plaintiff's product or goods. The purchase contract was negotiated and executed in New York. Delivery of the equipment subsequently was made in New York. The purchase price was payable in Minnesota.

Defendant claims the equipment sold was defective and that plaintiff has breached its contract and warranties. It has thus refused to pay some $90,000 of the purchase price for the recovery of which this suit is brought. The equipment was used in three different installations, two in the State of New York and one in New Jersey.

The only portion of the contract performable in Minnesota is the payment of the purchase price. Plaintiff does point out, however, that the parties had substantial negotiations prior to commencement of this suit in an effort to adjust their differences and this involved correspondence with and telephone calls to and from plaintiff and its counsel in Minnesota. Further, plaintiff and defendant have had business relationships with each other over a period of many years prior to the present contract in dispute.

Plaintiff takes the view that defendant's purchase order engendered substantial activity in Minnesota, caused plaintiff to manufacture equipment costing some $147,865.13 and constituted sufficient activity within, and minimal contracts with, the State of Minnesota to constitute "doing business" in Minnesota within the meaning of Minn.Stat. § 303.13 Subd. 1(3) which provides:

"(3) If a foreign corporation makes a contract with a resident of Minnesota to be performed in whole or in part by either party in Minnesota, or if such foreign corporation commits a tort in whole or in part in Minnesota against a resident of Minnesota, such acts shall be deemed *to be doing business in Minnesota* by the foreign corporation and shall be deemed equivalent to the appointment by the foreign corporation of the secretary of the state of Minnesota and his successors to be its true and lawful attorney upon whom may be served all lawful process in any ac-

tions or proceedings against the foreign corporation arising from or growing out of such contract or tort. Such process shall be served in duplicate upon the secretary of state * * *. The making of the contract or the committing of the tort shall be deemed to be the agreement of the foreign corporation that any process against it which is so served upon the secretary of state shall be of the same legal force and effect as if served personally within the state of Minnesota."

It is clear that the contract literally is "to be performed in whole or in part by either party * * * in Minnesota"; that plaintiff is a resident of Minnesota; that the purchase price was to be paid to plaintiff in Minnesota; and that the goods were to be manufactured in Minnesota. Plaintiff claims the combination of engendering activity within Minnesota by submitting a purchase order, the contract provision for payment of the purchase price in Minnesota, the long-distance contracts with plaintiff and with Minnesota counsel in attempting to adjust the present dispute and the fact of past dealings between the parties over many years, taken together, are sufficient contact with and activities within the State of Minnesota to permit the service of process which it made on the Minnesota Secretary of State under this long-arm statute.

Alternatively plaintiff claims the most recently enacted (1969) Minnesota long-arm statute § 543.19 Subd. 1 applies. This provision as follows:

"As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any non-resident individual, or his personal representative, in the same manner as if it were a domestic corporation or he were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or non-resident individual:

* * * * * *

(b) Transacts any business within the state,

* * * * * *

Subd. 2. The service of process * * * may be made by personally serving the summons upon the defendant outside of this state with the same effect as though the summons had been personally served within this state."

Plaintiff contends, for all of the reasons above recited, that this statute also permits personal service on defendant outside the state. Accordingly plaintiff effected such personal service on defendant through the United States Marshal in New York.

As to both statutes plaintiff claims after pointing out that read literally by their terms they apply in this case:

(1) The courts of the State of Minnesota would uphold service of process in the manner here made and

(2) The securing of in personam jurisdiction in this case is consistent with and not violative of federal due process.

■ Any plaintiff, when challenged, has the burden to prove that it has obtained in personam jurisdiction. Williams v. Connolly, 227 F.Supp. 539, 550 (D.Minn.1964). A prima facie showing on a pretrial motion is sufficient however. Kornfuehrer v. Philadelphia Bindery, Inc., 240 F.Supp. 157, 158 (D.Minn. 1965); United Barge Co. v. Logan Charter Service, Inc., 237 F.Supp. 624, 631 (D.Minn.1964). The leading case in the Eighth Circuit is Aftanase v. Economy Baler Co., 343 F.2d 187 (8th Cir. 1965), in which the Court of Appeals analyzed the various Minnesota cases and reiterated the requirements of International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), that valid exercise of jurisdiction requires that non-resident defendants have "certain minimum contacts * * * such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". *Aftanase* recognized

that more recent federal cases have "greatly relaxed the due process limitations on personal jurisdiction". It was there acknowledged that a state may impose stricter limitations than those proscribed by the bounds of due process and a federal court should observe these further limitations where a diversity case is instituted in a United States District Court or is one removed from a State court.

■ The Minnesota Supreme Court has indicated that it will assert maximum jurisdiction consistent with the limitations imposed by due process. This court interprets the Minnesota Supreme Court holdings to mean that the outer limits of due process are co-extensive and equate with the limits of permissive service of process on foreign corporations under long arm statutes. In McNeely v. Clayton & Lambert Mfg. Co., 292 F.Supp. 232, 236 (D.Minn. 1968), this court observed that Minnesota will assert maximum jurisdiction permissible, citing a number of Minnesota cases including Dahlberg Co. v. Western Hearing Aid Center Ltd., 259 Minn. 330, 107 N.W.2d 381, cert. denied 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961). See the subsequent case of Hunt v. Nevada State Bank, 285 Minn. 77, 172 N.W.2d 292 (1969), cert. denied Burke v. Hunt, 397 U.S. 1010, 90 S.Ct. 1239, 25 L.Ed.2d 423 (1970).

■ Since the reaches of due process are co-extensive with in personam jurisdiction allowed by the Minnesota Supreme Court, in reality it becomes immaterial to determine what action the Minnesota Supreme Court would take in this case since the Minnesota Supreme Court could not exceed limitations of due process and would not be more restrictive. The Minnesota Supreme Court in frequent utterances has however required "at least minimal" contacts with Minnesota. This court doubts whether the Minnesota Supreme Court would sustain jurisdiction in this instance despite certain broad language in the most recent cases of Hunt v. Nevada

State Bank, *supra,* and Wuertz v. Garvey, 287 Minn. 353, 178 N.W.2d 630, 631 (1970), both sustaining jurisdiction under the long-arm statutes. The prior cases of Fourth Northwestern Nat. Bank v. Hilson Industries Inc., 264 Minn. 110, 117 N.W.2d 732 (1962), and Marshall Egg Transport Co. v. Bender-Goodman Co. Inc., 275 Minn. 534, 148 N.W.2d 161 (1967), particularly the former, are persuasive. The *Hilson Industries* case was a suit to recover on promissory notes which grew out of a transaction whereby a Minnesota manufacturer of automatic ice vending machines sold 50 coolers to a foreign corporation in Ohio. After a dispute and a trip to Ohio by a representative of the Minnesota manufacturer, certain stipulations were then arrived at, including the execution of three promissory notes. The notes were payable in Minnesota and were then subsequently assigned to the Fourth Northwestern National Bank which, after commencing suit thereon, reassigned the same to the original payee who continued the suit. The court quashed the service of summons and dismissed the action on the basis that application there of Section 303.13 violated the due process provisions of the Fourteenth Amendment. The court held that where the only connection with Minnesota is the fact that the notes are payable here, such is not sufficient jurisdictional conferment. Counsel for plaintiff attempts to draw a distinction between the fact that the suit in *Hilson Industries* was on the notes rather than on the underlying contract purchase price and that such "led the court to ignore the substantial impact on the commerce of Minnesota which was foreseeable and produced by defendant's consummation of the transaction involving its purchase of 50 large coolers produced by plaintiff in Minnesota." This is a specious distinction. It seems to this court that the Minnesota Supreme Court would be most apt to follow the rationale of *Hilson Industries* and hold that long-arm service is ineffective in a case such as at bar where the only connection with

Minnesota is the fact that the purchase price is payable here and to decree that such would be in violation of the due process provision of the Fourteenth Amendment. The *Marshall Egg Transport* case is an *a fortiori* from *Hilson Industries* for there certain eggs, the property of an Iowa corporation, were shipped from Iowa to New Jersey and later to New York, never coming into nor being produced in Minnesota. The only connection with Minnesota was that *Marshall Egg Transport Co.* "brokered" the transaction, conferred with defendant over the long-distance phone and a $3,600 check (payment later stopped) was mailed to Minnesota. The court held that the application of Minn.Stat. § 303.13 would violate due process. The purchase order, if any in that case, generated no manufacturing activity in Minnesota.

Fundamentally it seems to the court that to permit in personam jurisdiction in this case under either of the Minnesota long-arm statutes is to offend traditional notions of fair play and substantial justice. If plaintiff's position is sound, then it or any other Minnesota manufacturer can sue all of its customers wherever they may be located in the United States who for good or bad reason have failed to pay their bills or the purchase price of goods. Counsel would argue that the activity generated by virtue of a corporation in a foreign state giving a salesman who is travelling in that foreign state an order which is to be filled in Minnesota is sufficient minimal contacts to give jurisdiction. By the same token, if this were sound, the plaintiff could be sued in any state where it submits a purchase order for raw materials and supplies and the goods are shipped to Minnesota. This concept almost completely obliterates state lines and would lead to the result that anyone who deals with a Minnesota resident in any way or buys a product manufactured by any Minnesota company, can be brought into the Minnesota courts to respond to a suit.

The general philosophy of long-arm statutes is to protect citizens of a state where a nonresident comes into the State directly or indirectly to sell something or solicit sales, or where, even though out of state, a nonresident sells a product which is brought into or comes to rest in the State. The nonresident thus receives the benefit and protection of the state's laws and profits or hopes to from its adventure therein. The nonresident is the aggressor or initiator. It is appropriate that such a nonresident seller should respond to service of process in that state. Quite the contrary, however, where in a case such as at bar the plaintiff is the movant, the aggressor so to speak not in Minnesota but by going to New York, soliciting defendant's business, making a contract in New York, selling the defendant merchandise to be manufactured in Minnesota and delivered in New York and the price to be remitted to plaintiff in Minnesota. If merely because the manufacturing process and payment of the price is to occur in Minnesota such confers jurisdiction in Minnesota, then it's hard to conceive of any case where the long-arm statutes do not apply. The Minnesota Supreme Court itself in the *Hilson Industries* case *supra,* drew the distinction between suing a non-resident seller and invoking Minn.Stat. § 303.13 against a non-resident buyer.

The court said:

"We believe it is significant that the Beck [Beck v. Spindler, 256 Minn. 543, 99 N.W.2d 670]; Adamek [Adamek v. Michigan Door Co., 260 Minn. 54, 108 N.W.2d 607], and Paulos [Paulos v. Best Securities Inc., 260 Minn. 283, 109 N.W.2d 576] cases all resulted in the protection of *individuals* damaged in one way or another by nonresident defendants who sold their products in this state or whose products found their way here and caused injury to a Minnesota resident. In each instance the nonresident defendant had been the aggressor, so to speak, and had had substantial contact with the forum, invoking its protec-

tion for the privilege of doing business here. It had subjected itself to the reciprocal obligation of amenability to suit in return for the right to compete for sales in our market places. * * *" 117 N.W.2d at 735

\* \* \* \* \* \*

"* * * We have, instead, a corporate resident plaintiff who has taken the initiative in response to a nonresident corporation's inquiries. The nonresident corporation enjoys no particular privilege or protection in purchasing products from the resident seller, none akin to the rights exercised by a party seeking to distribute its products within the forum state. It would seem short-sighted indeed to discourage the sale of Minnesota products to nonresidents by subjecting buyers to our jurisdiction where the contacts are so casual." 117 N.W.2d at 736

Again, on the question of repeated transactions, the Minnesota Supreme Court stated the following in *Marshall Egg Transport, supra*:

"* * * [W]here a single transaction would lack the degree of participation necessary to require defendant's submission to the jursidiction of this state, such a deficiency could not be cured merely by repeated similar transactions." 148 N.W.2d at 164

Plaintiff's position is not completely without support. See Simpson Timber Co. v. Great Salt Lake Minerals & Chemicals Corp., 296 F.Supp. 243 (D. Or.1969), which appears under an Oregon long-arm statute to adopt a theory compatible to plaintiff's contention. That court seemed to feel that the "causing of a consequence in the forum state" can satisfy the minimum contacts test of *International Shoe Company*. See also Southern Machine Company v. Mohasco Industries, Inc., 401 F.2d 374 (6th Cir. 1968); Custom Leasing, Inc. v. Gardner, 307 F.Supp. 161 (N.D.Miss. 1969). On the contrary, the United States Supreme Court in Hanson v. Denckla, 357 U.S. 235, 251, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), stated:

"* * * But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. * * * However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." 357 U.S. at 251, 78 S.Ct. at 1238.

Electro-Craft Corp. v. Maxwell Electronics Corp., 417 F.2d 365 (8th Cir. 1969), is sufficiently distinguishable on its facts to be inapposite here.

The latest case in this court, dutifully and responsibly called to this court's attention by plaintiff's counsel himself, is Guardian Packaging Corp. v. Kapak Industries, Inc., 316 F.Supp. 952 (D.Minn. 1970). This was a motion to dismiss by a nonresident purchaser on whom service had been attempted under Minn.Stat. § 303.13 Subd. 1(3). The court rather clearly held that in view of the defendant's status as a nonresident purchaser from a Minnesota seller "single act" long-arm service was not a sufficient basis for in personam jurisdiction interpreting the Minnesota cases.

In sum, what plaintiff asks is that this court hold that any purchaser from any Minnesota based corporation where goods have been manufactured in Minnesota may be sued in the Minnesota courts within due process limitations, and thus in diversity actions in this court, irrespective of whether that defendant has any connection with the State of Minnesota other than that the purchase price is payable in Minnesota and that by the submission of its purchase order the nonresident has engendered some activity within the State. It would seem to this court that to do so would violate traditional standards or notions of fair play and substantial justice and would go beyond the parameters permitted by the Fourteenth Amendment due process clause.

Traditional notions of fair play contemplate that a defendant has the right to be sued in the jurisdiction and venue of his residence. So within Minnesota itself, if a defendant is sued even in a county other than that in which he resides, he is entitled automatically and without any order of court in the first instance to a change of venue to the county of his residence unless the cause of action arose in the county where sued. Minn.Stat. § 542.10. The rationale behind this long time statutory precedent is that a defendant ought to be entitled to defend himself among people and in a community where he resides and is known, his witnesses generally will reside in or near the place of his residence, his counsel will be from his community, the goods he has purchased (if the case is one of this type) likely will be situate in his home community. Such concepts have roots deep in common law traditions. It would seem that this is what the United States Supreme Court meant by "traditional notions of fair play and substantial justice" in *International Shoe, supra*. The above arguments and reasoning become far more cogent and applicable when one thinks in terms of two states, rather than counties within a state, and particularly where separated by some 1,500 or more miles. These arguments the court recognizes are not applicable under long-arm statutes where a defendant takes the initiative or is the aggressor and goes into another state to transact business or to sell his wares.

Certainly in a case such as at bar where the alleged defective equipment costing over $100,000 is in New York and nearby New Jersey, witnesses who have used it and experienced it are there and only the manufacturer is in Minnesota, the court certainly would be faced with a motion for a change of venue. As a practical matter, were the rule not as herein decided, the federal courts would be presented in many if not most cases with motions to transfer under 28 U.S. C. § 1404(a) for *forum non conveniens* and frequently such motions would of

necessity have to be granted. This is a relevant consideration. See Guardian Packaging Corp. v. Kapak Industries, Inc., supra at p. 955

A separate order quashing service and dismissing the action has been entered.