**DAVID M. RICE, INC., Respondent,**

v.

**INTREX, INCORPORATED, Appellant.**

**No. 47174.**

Supreme Court of Minnesota.

Aug. 12, 1977.

Henson & Efron and Peter H. Hitch, Minneapolis, for appellant.

Cousineau, McGuire, Shaughnessy & Anderson and Peter G. Van Bergen, Minneapolis, for respondent.

MacLAUGHLIN, Justice.

Plaintiff, David M. Rice, Inc. (Rice), a Nebraska corporation, commenced an action in a Nebraska state court against defendant, Intrex Incorporated (Intrex), a New York corporation, and obtained a default judgment in the amount of $2,249.60. Subsequently, Rice brought an action on the judgment in Minnesota gaining quasi-in-rem jurisdiction by garnishment. The Hennepin County Municipal Court granted Rice's motion for summary judgment and Intrex appeals, alleging that there was no valid in personam jurisdiction over Intrex in the Nebraska court. For the reasons stated herein, we affirm the trial court.

Rice engages in the interior design business in Nebraska and Intrex engages in the manufacture and sale of furniture in New York. The action in Nebraska was commenced by Rice against Intrex and against its manufacturer's representative, Patterson Representation Company, Inc. (Patterson), which is incorporated in Minnesota.[1] Rice alleged that it had ordered four Deacon tables from Intrex, through Patterson, for resale to a client for whom Rice was performing interior design services. Rice alleged that the tables, for which it paid $605, were defectively manufactured, resulting in a breach of implied warranty.

Intrex was served with process in New York with in personam jurisdiction being asserted under Nebraska's long-arm statute. Neb.Rev.Stat. § 25–535 to 25–541 (Supp.1974). Intrex did not answer or otherwise plead or appear in Nebraska to defend against the action, and a default judgment against Intrex was ordered by the Nebraska district court in December 1973.

In May 1976 Rice commenced this action on the Nebraska judgment acquiring quasi-in-rem jurisdiction by garnishment of Intrex' property located within Minnesota, pursuant to Minn.St. 571.41 to 571.69. Intrex answered, alleging that the Nebraska court lacked proper personal jurisdiction of Intrex so that the Nebraska judgment was null and void and thus unenforceable in

---

1. The disposition of the Nebraska action against Patterson is not considered in this opinion since Patterson is not a party to the suit in Minnesota.

Minnesota.[2] Thereafter, Rice moved for summary judgment which was granted. The trial court determined that Intrex had been amenable to suit in Nebraska so that it was proper for Minnesota to grant full faith and credit to the Nebraska judgment. This appeal followed.

Intrex contends that the Nebraska judgment is not enforceable in Minnesota because the Nebraska District Court did not validly exercise personal jurisdiction over Intrex when it rendered the default judgment. In support of that contention Intrex established that it had never maintained an office or other facility in Nebraska, had never kept a bank account in Nebraska, had never sent a salesman or agent into Nebraska for any business purpose, and had never entered into a contract in Nebraska to supply merchandise or services in that state.

Intrex does not deny, however, that it shipped goods into Nebraska by common carrier addressed to Rice, and had previously shipped goods to other buyers in Nebraska before the transaction in question pursuant to purchase orders received from out-of-state representatives such as Patterson. Intrex maintains that during the preceding 5 years, orders totaling only $2,500 per year were sent into Nebraska; this amounted to $\frac{1}{10}$ of 1 percent of their annual gross sales of $2,500,000. In light of these facts, Intrex concludes that to subject it to the jurisdiction of the Nebraska court would force Intrex to bear an unjust and unconstitutional burden.

■■■ 1. This court recognizes the right of a defendant to contest an action brought on the basis of a foreign court's judgment by demonstrating that the foreign court rendered judgment in the absence of proper personal jurisdiction. It is clear that such judgments are not entitled to full faith and credit in Minnesota. *Hutson v. Christensen*, 295 Minn. 112, 203 N.W.2d 535 (1972). The proper exercise of in personam jurisdiction over a nonresident defendant requires: (a) compliance with appropriate state legislation enacted to provide the

court with jurisdiction, and (b) the exercise of jurisdiction under circumstances which do not offend the due process clause of the United States Constitution.

2. Applicable to the instant case is Neb. Rev.Stat. § 25–536 (Supp.1974), which provides in pertinent part:

"(1) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's:

"(a) Transacting any business in this state;

"(b) Contracting to supply services or things in this state."

This statute provides broad standards for assertion of in personam jurisdiction over nonresidents of Nebraska. Indeed, the Nebraska Supreme Court concluded in *Stucky v. Stucky*, 186 Neb. 636, 641, 185 N.W.2d 656, 659 (1971), that the statute indicated "the legislative intention to apply the minimum contacts rule where it does not offend traditional concepts of fair play and substantial justice." The United States District Court for Nebraska in *General Leisure Products Corp. v. Gleason Corp.*, 331 F.Supp. 278, 280 (D.Neb.1971), held that the fact that the nonresident defendant had no distributors, warehouses, places of business, or sales representatives or employees in the state of Nebraska, did not preclude in personam jurisdiction and observed:

"* * * [W]hen a product is placed in a distributive chain with the destination Nebraska then the requirements of § 25–536 'transacting any business in the state' or § 25–536(1)[b] 'contracting to supply services or things in this state' are met. * * * Shipping and freight arrangements do not alter the character of the event, and the point at which title passes is not determinative."

The court concluded that:

"* * * As a general statement it has been decided that the Nebraska long-arm statute is to be interpreted broadly in view of the rationale and philosophy

---

**2.** Intrex stated in its answer: "The Nebraska action in which the judgment against Defend-

ant is alleged to have been recovered was founded upon contract."

underlying the adoption of the long-arm statute, and not narrowly and strictly." 331 F.Supp. 279.

Based upon all the facts of this case, and the applicable law as construed by courts in Nebraska, we conclude that the provisions of the Nebraska long-arm statute were satisfied, and that proper jurisdiction was asserted over defendant within the scope of the statute.

■ 3. For there to be a constitutional exercise of in personam jurisdiction over a nonresident defendant, the United States Supreme Court has required that the nonresident defendant have certain minimum contacts with the state so that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102 (1945). Whether due process is satisfied depends upon the quality and nature of the activity in relation to the fair and ordinary administration of justice which it is the purpose of the due process clause to insure.

■ In the leading case of *Aftanase v. Economy Baler Co.*, 343 F.2d 187 (8 Cir. 1965), Judge (now Justice) Harry Blackmun set forth five factors to be applied in the determination of whether there have been sufficient minimum contacts to satisfy constitutional requirements of due process. They are (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of the state in providing a forum for its residents; and (5) the convenience to the parties.

There is no difficulty in deciding that factors (3), (4), and (5) are satisfied in the instant case. The cause of action arose directly from the contacts of Intrex with the state of Nebraska, since the suit against Intrex was based on a claim of breach of warranty as to furniture shipped into Nebraska by Intrex pursuant to the agreement. The interest of Nebraska in providing a suitable forum for one of its residents who purchased goods from an out-of-state

manufacturer seems obvious, as does the convenience to the plaintiff-buyer of using the Nebraska courts to pursue its relatively small claim rather than being forced to commence the lawsuit in New York. As stated by the United States Supreme Court in *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957):

> "When claims [are] small or moderate individual claimants frequently [cannot] afford the cost of bringing an action in a foreign forum—thus in effect making the company judgment proof."

The application of factors (1) and (2)—the nature and quality of the contacts and the quantity of the contacts—is a more difficult question under the facts of this case. However, we have concluded those factors are also marginally satisfied.

(a) As to the nature and quality of the contacts, manufacturer's representatives have sought sales on behalf of Intrex in Nebraska and Intrex has accepted those orders for its products. The fact that the manufacturer's representative for Intrex in this case was not a Nebraska corporation or located in Nebraska is not controlling. Intrex, the out-of-state seller, made arrangements for the direct shipment of its merchandise to Rice, a Nebraska resident and buyer. The merchandise was sent by Intrex by common carrier making full use of the channels of interstate commerce to complete the transaction. Intrex reasonably could have anticipated that the sale and shipment of its furniture into Nebraska would have consequences within that state. Moreover, by voluntarily placing its products in the Nebraska market, Intrex derived benefit therefrom and invoked the benefit and protection of Nebraska laws. *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

(b) While the quantity of the contacts are admittedly minimal, Intrex acknowledges that it had shipped furniture into Nebraska for 5 years prior to the transaction in question in an amount approximating $2,500 per year. Even if such sales are not continuous or extensive, compared to Intrex' total an-

nual sales, the shipment to Rice in Nebraska was not unique or nonrecurring.

Admittedly the factors of Aftanase relating to the quality and quantity of the contacts are only minimally met in this case. However, we are persuaded that, where a buyer in a forum state finds it necessary to bring suit against an out-of-state seller in circumstances where the legal and economic interests of commencing the action in the seller's state are obvious, and where there is at least minimal compliance with due process as measured by the Aftanase factors, such an action may be maintained without violation of the constitution.

Affirmed.