**KREISLER MANUFACTURING CORPORATION, Respondent,**

v.

**HOMSTAD GOLDSMITH, INC., Appellant.**

No. 81–1279.

Supreme Court of Minnesota.

July 30, 1982.

Richard W. Martin, Faribault, for appellant.

Lampe, Fossum, Jacobson, Borene & Crow, Northfield, for respondent.

TODD, Justice.

Plaintiff Kreisler Manufacturing Corporation (Kreisler), a Florida corporation, brought an action in Florida against defendant Homstad Goldsmith, Inc. (Homstad), a Minnesota corporation, and, after acquiring jurisdiction by means of personal service under a provision of Florida's long arm statute, Fla.Stat. § 48.193(1)(g) (1977), obtained a default judgment in the amount of $1,574.10 plus interest. Subsequently, Kreisler brought an action on the judgment in Minnesota. The Rice County District Court entered a judgment giving effect to the Florida default judgment. Defendant Homstad appeals from an order denying its motion to set aside the judgment, alleging that the Florida court did not have valid jurisdiction. Because we find that jurisdiction under the Florida statute was questionable, and, more importantly, that jurisdiction under the circumstances present in this case offends constitutional guarantees of due process, we reverse the trial court.

Kreisler manufactured and sold jewelry to retail jewelers throughout the United States from its business in Pinellas County, Florida. During a sales trip through the Midwest, a Kreisler salesman visited Homstad's jewelry store in Northfield, Minnesota. Homstad ordered various items of jewelry including lighters, watchbands, pens and pencils. In return Homstad was to send payment to Kreisler at its office in St. Petersburg, Florida.

The items ordered were manufactured and shipped.[1] After unsuccessful attempts to get Homstad to pay the amount due on the contract, Kreisler brought an action in the County Court, Pinellas County, Florida, Civil Division, against Homstad to recover the money due, with interest since January 6, 1979.

Personal service of the summons and complaint in the action was made on Keith Homstad, president of Homstad Goldsmith, Inc., at the corporation's store in Northfield in April 1980, pursuant to Fla.Stat. §§ 48.-081 and 48.193 (1977). Homstad did not file an answer nor make an appearance, and a default judgment was entered in favor of Kreisler in June 1980. The following January the judgment was transferred to Minnesota. Homstad moved to set it aside on the grounds that the Florida court did not have valid jurisdiction over the corporation, that the judgment had been obtained by fraud and that the service of process was invalid. The trial court found against Homstad on each point.

We base our decision on the first of these grounds.[2] A defendant may contest an action brought on the basis of a foreign court's judgment by demonstrating that the foreign court rendered judgment in the absence of proper personal jurisdiction; such judgments are not entitled to full faith and credit in Minnesota. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d 370 (Minn.1977); *Hutson v. Christensen*, 295 Minn. 112, 203 N.W.2d 535 (1972). The proper exercise of in personam jurisdiction over a nonresident defendant requires, first, compliance with appropriate state legislation enacted to provide the court with jurisdiction and, second, the exercise of jurisdiction under circumstances which do not offend the due process clause of the federal

---

1. Homstad claims that a portion of the shipment was defective and that it made unsuccessful attempts to return part of its order; Kreisler disputes the matter. Because of the nature of the disposition in the Florida court, this issue was never reached.

2. Homstad did not appeal the trial court's finding that service itself was proper.

   As for Homstad's claim that the Florida judgment was obtained by fraud, it is true that a judgment of another state may be impeached if it was entered or procured by fraud. *Perkins v. Benguet Consol. Mining Co.*, 55 Cal.App.2d

720, 132 P.2d 70 (1942), *cert. denied*, 319 U.S. 774, 63 S.Ct. 1435, 87 L.Ed. 1721 (1943). But in such a case the fraud must not be in the merits of the case but must be directed against the court itself—it must have been fraud "in the concoction of the judgment." *Hirson v. United States Corp.*, 34 N.Y.S.2d 122, 263 App.Div. 646 (1942), *aff'd*, 289 N.Y. 564, 43 N.E.2d 712 (1942). Because Homstad's argument involved alleged fraud as a defense against payment on the contract and not fraud in the acquisition of the judgment itself, we could not reach the issue here even if we found proper jurisdiction.

constitution. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d at 372.

1. Kreisler attempted to obtain jurisdiction over Homstad pursuant to a Florida long arm statute which provides for personal service on a nonresident who "[b]reaches a contract in this state by failing to perform acts required by the contract to be performed in the state." Fla.Stat. § 48.-193(1)(g) (1977). According to Kreisler, Homstad had a duty under the contract to make payment in Florida for the goods shipped to Minnesota and failure to make that payment created a breach of contract in Florida.

To determine whether this particular assertion of jurisdiction is proper under the Florida statute, this court must look to interpretations of the Florida statute by the Florida courts. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d at 372–73. In cases such as this one, the Florida courts appear to disagree among themselves whether jurisdiction is proper under section 48.-193(1)(g). A breach created by a nonresident's failure to pay a Florida resident under the terms of a contract was held a proper basis for jurisdiction in *Madax International Corp. v. Delcher Intercontinental Moving Services, Inc.*, 342 So.2d 1082 (Fla. Dist.Ct.App.1977), and *Professional Patient Transportation, Inc. v. Fink*, 365 So.2d 209 (Fla.Dist.Ct.App.1978).

However, by carefully distinguishing *Madax*, the Florida appellate court has recently defined subsection (g) more narrowly, warning against those situations in which a literal reading may result in infringement of the due process protection the constitution provides for nonresidents. *Osborn v. University Society, Inc.*, 378 So.2d 873 (Fla. Dist.Ct.App.1979).[3] The *Osborn* court also noted an additional forum state contact in *Madax* not present in *Osborn*. In *Madax*, subsection (g) jurisdiction was obtained over a nonresident defendant who had contracted for services to be performed *within* Florida, while in *Osborn* the nonresident defendant had contracted for consulting services to be performed at an unspecified location. Since the goods here were to be delivered outside of Florida, the present case is more like *Osborn* than *Madax*. As a result of the *Osborn* decision, there is no Florida case except *Professional Patient* in which jurisdiction was found under subsection (g) where the failure to pay was arguably the *only* contact between the nonresident defendant and the forum state.[4] *Professional Patient*, decided by Florida's Third Appellate District, simply followed *Madax* in a one paragraph opinion holding that the Florida court has jurisdiction over a nonresident defendant who contracted for services to be supplied outside of Florida and who failed to pay in Florida.

At best, therefore, the Florida courts are at a draw concerning the applicability of subsection (g) to situations involving such scant connections with the forum as are present here.[5]

---

3. *Osborn v. University Soc'y, Inc.*, 378 So.2d 873 (Fla.Dist.Ct.App.1979) decided in Florida's Second Appellate District, the same court which had earlier considered *Madax*; the same judge wrote both opinions. The Florida Supreme Court has not yet ruled on the applicability of subsection (g) to cases in which a failure to pay was the nonresident defendant's only contact with Florida.

4. Several other cases have cited subsection (g) as a statutory basis and, specifically, the failure to pay as a breach in finding proper jurisdiction, but all have included among their facts other connections with the forum. These are discussed below in regard to the constitutional requirement of minimum contacts.

5. In light of the questions this raises about application of the Florida statute in the present case, we note that the Florida courts themselves have said that the statute providing the basis for jurisdiction must be construed strictly to guarantee conformity to due process requirements. *Cosmopolitan Health Spa, Inc. v. Health Indus., Inc.*, 362 So.2d 367, 368 (Fla. Dist.Ct.App.1978); *Bank of Wessington v. Winters Gov't Securities Corp.*, 361 So.2d 757, 759 (Fla.Dist.Ct.App.1978).

In addition, the Florida courts have warned that, in some instances, facial jurisdiction under the long arm statute does not guarantee sufficient minimum contacts with Florida to satisfy due process requirements. *Pennington Grain & Seed, Inc. v. Morrow Bros. Seed Co.*, 400 So.2d 157, 159 (Fla.Dist.Ct.App.1981); *Lakewood Pipe of Texas, Inc., v. Rubaii*, 379 So.2d 475, 477 (Fla.Dist.Ct.App.1979).

2. Beyond statutory sufficiency, this court will inquire into whether the exercise of another state's jurisdiction over a Minnesota resident conforms to the constitutional guarantees of due process. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d 370, 372 (Minn.1977). In situations such as this, the nonresident defendant must have sufficient minimum contacts with the forum state to comply with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). In addition, the defendant must, by his activities in the forum state, have invoked both the benefits and the protections of the forum state's law. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). More specifically, in a contract dispute, the contract has to have a *substantial connection* with the forum state. *McGee v. International Life Insurance Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

When examining cases where little connection between the defendant and the forum state appears to exist, particularly where a *single act* connects plaintiff and defendant, the courts have looked especially to the defendant's role, purpose or expectation in the events in question. It is vital that the defendant's "conduct and connection with the forum State are such that he should *reasonably anticipate* being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) (emphasis added). Such reasonable anticipation may be indicated by acts by which the defendant *"purposefully avails* [himself] of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). In contrast to the purposeful behavior of defendants over whom jurisdiction is justified, nonpurposeful and nondeliberate behavior does not invoke jurisdiction even where there was a form of contact with the forum. *See Denckla* and *World-Wide Volkswagen*.

Examining the present case in light of these formulations, we find in both the quantity and the quality of the contacts between Homstad and the forum state a connection insufficient to provide proper jurisdiction.[6]

### A. Quantity of contacts.

Respondent Kreisler describes two contacts between Homstad and Florida as legally significant to this case: product orders were filled out and signed in Minnesota then mailed to Florida and payment was due in Florida. Florida courts have consistently required more contacts than these where assertion of jurisdiction has been upheld. Beyond *Professional Patient*, no other Florida decision has based jurisdiction on so little. In fact, as noted above, *Osborn* specifically distinguished such a situation as lacking in minimum contacts when it denied jurisdiction over the nonresident defendant sued in that case.

And finally, the Florida courts have stated that section 48.193 requires, in general, *more* activities or contacts to sustain assertion of jurisdiction than are currently required by decisions of the United States Supreme Court. *Electro Eng'g Prod. Co. v. Lewis*, 352 So.2d 862 (Fla.1977); *Bank of Wessington v. Winters Gov't Securities Corp.*, 361 So.2d 757 (Fla.Dist. Ct.App.1978).

6. In both Florida and Minnesota, courts have culled from United States Supreme Court opinions principal factors against which particular actions are to be measured. Florida employs a two-part test: (1) there has to be some minimum contact with the state resulting from an affirmative act by the defendant, and, (2) it must be fair and reasonable to require the defendant to come into the state to defend the action. *Lacy v. Force V Corp.*, 403 So.2d 1050 (Fla.Dist.Ct.App.1981) (following *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974)).

In Minnesota, three factors have particular significance: the quantity of contacts with the forum, the quality and nature of those contacts and the connection between the contacts and the cause of action. Of secondary importance are two additional factors: the interests of the forum state and the convenience of the parties and witnesses. *Munsingwear, Inc. v. Damon Coats, Inc.*, 449 F.Supp. 532, 535 (D.Minn.1978) (determining jurisdiction based on Minnesota's "one-act" long arm statute, Minn.Stat. § 303.13) (1980).

Where jurisdiction has been found under subsection (g) as a result of contract breach caused by a defendant's failure to pay, these *additional* contacts were present: defendant also engaged in business in Florida, signed contract in the state and agreed to deliver goods in state, *Guritz v. American Motivate, Inc.*, 386 So.2d 60 (Fla.Dist.Ct. App.1980); defendant came to Florida to execute promissory note, *First National Bank of Kissimmee v. Dunham*, 342 So.2d 1021 (Fla.Dist.Ct.App.1977), *Feldman v. Southeast Bank of Dadeland*, 323 So.2d 628 (Fla.Dist.Ct.App.1975); services were to be performed in Florida *Madax International Corp. v. Delcher Intercontinental Moving Services, Inc.*, 342 So.2d 1082 (Fla.Dist.Ct. App.1977); and defendant company's president visited Florida to discuss and arrange sale and company had sold products in Florida for at least 5 years preceding the sale in question, *Dublin Co. v. Peninsular Supply Co.*, 309 So.2d 207 (Fla.Dist.Ct.App.1975). Where subsection (g) jurisdiction was based on breach of warranty, the defendant had also agreed to perform the contract in Florida, *Lacy v. Force V Corporation*, 403 So.2d 1050 (Fla.Dist.Ct.App.1981).

In contrast, cases brought under subsection (g) which failed to meet the minimum contacts standard are more like the present case: no jurisdiction over the guarantor of another's contracted obligation payable in Florida, *Lakewood Pipe of Texas, Inc. v. Rubaii*, 379 So.2d 475 (Fla.Dist.Ct.App. 1979); no jurisdiction even though contract signed in Florida and some payments already made in Florida, *Osborn v. University Society, Inc.*, 378 So.2d 873 (Fla.Dist.Ct. App.1979); and no jurisdiction where Florida bank sold securities to South Dakota bank and phone calls between the two parties were asserted as the basis for use of subsection (g), *Bank of Wessington v. Winters Government Securities Corp.*, 361 So.2d 757 (Fla.Dist.Ct.App.1978) and *Citizens State Bank v. Winters Government Securities Corp.*, 361 So.2d 760 (Fla.Dist.Ct.App. 1978).

Although this court is not obligated to follow the Florida appellate courts' determination of the constitutional issue, these decisions suggest that even the courts of the forum state, those least likely to be overly generous to nonresidents at the expense of Floridians, have drawn a line which would exclude appellant Homstad from the reach of the Florida courts.

**B. Quality and nature of contacts.**

While courts refuse to prescribe mechanical rules in matters of jurisdiction over nonresidents, a common characteristic of defendants properly subject to jurisdiction emerges from the cases—such defendants initiated contacts with the forum, they actively sought out business in the state, they "purposely availed" themselves of this jurisdiction. By contrast, "[t]he unilateral activity of those [forum residents] who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239. The distinction between initiating or being drawn into contact with the forum is especially relevant in this case where, unlike most of the cases in which the jurisdictional issue arises, the nonresident defendant is the buyer and the resident plaintiff is the seller.[7]

We have previously distinguished between sellers and buyers, noting that jurisdiction under Minn.Stat. § 303.13 (1980) was proper in cases in which:

[T]he nonresident defendant had been the aggressor * * * and had had substantial contact with the forum, invoking its protection for the privilege of doing business here. [Such a defendant] subjected itself to the reciprocal obligation of amenability to suit in return for the right to compete for sales in our market places.

---

**7.** A nonresident buyer's potential lack of contact with the forum state is particularly apparent here where the Florida seller sent a sales representative to Minnesota to solicit business, the representative went to Homstad's North-field store and persuaded the owners to buy, they filled out the purchase orders on the spot, and the goods were later delivered to Homstad in Minnesota.

*Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc.*, 264 Minn. 110, 115–16, 117 N.W.2d 732, 735 (1962). In *Hilson,* the court observed that a "general tendency of courts to require less in the ways of *sales* activity to bring a foreign corporation within the jurisdiction of a state has not been accompanied by any parallel lessening of requirements as to *purchasing* activities." *Id.,* 264 Minn. at 116, 117 N.W.2d at 735 (emphasis in original) (quoting *Waltham Precision Instrument Co. v. McDonnell Aircraft Corp.,* 203 F.Supp. 539, 541 (D.Mass.1962)). Because this case isolates the duty to pay in the forum state as a significant contact, we note that in *Hilson* the court stated that payment in the forum state arose "out of an effort by the nonresident defendant [buyer] to accommodate plaintiff [seller]. Fixing the place of payment at plaintiff's business residence is hardly the kind of commercial benefit to defendant that must be balanced by a countervailing capitulation to jurisdiction under § 303.13." *Id.,* 264 Minn. at 118, 117 N.W.2d at 736.

Similarly, we held that jurisdiction could not be obtained over a nonresident egg buyer where the seller's representatives had solicited the defendant's business and arranged the sale in question outside the forum. *Marshall Egg Transport Co. v. Bender-Goodman Co.,* 275 Minn. 534, 148 N.W.2d 161 (1967). We stated there that, "[I]t would be harsh justice to require defendant to submit to the jurisdiction of the Minnesota court on the basis of the meager contact of defendant with anyone in Minnesota." *Id.,* 275 Minn. at 537–38, 148 N.W.2d at 164.

Applying Minnesota law to facts very similar to the present case, a federal district court determined that jurisdiction in Minnesota was not available over a nonresident defendant buyer whose only contacts with the resident seller were, first, a contract of sale executed in Indiana in response to overtures from the plaintiff's sales representative traveling in Indiana and, second, the nonresident's refusal to make payment to the resident seller after a dispute over the quality of the products shipped. *Guardian Packaging Corp. v. Kapak Industries, Inc.,* 316 F.Supp. 952 (D.Minn.1970).[8]

Where jurisdiction has been found, this court has noted that the nonresident buyers initiated and actively pursued the Minnesota seller's business or had other contacts with the forum so that an acceptable minimum was reached. *Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc.,* 264 Minn. 110, 117 N.W.2d 732 (1962); *Marquette National Bank of Minneapolis v. Norris,* 270 N.W.2d 290 (Minn.1978).

■ While rigid rules cannot be applied in evaluating "whether traditional notions of fair play and substantial justice" are served, we find that, in the particular context of the facts of this case, the quantity and the quality and nature of the contacts between nonresident Homstad and the Florida forum do not meet the level required for the assertion of jurisdiction over Homstad. Therefore, we reverse the trial court's determination that jurisdiction was proper and hold that the Florida default judgment against the appellant is not enforceable in Minnesota.

Reversed.

■

8. In *Guardian Packaging Corp. v. Kapak Indus., Inc.,* 316 F.Supp. 952 (D.Minn.1970), the court stated that it did not reach the issue of constitutional due process but decided the case only under Minnesota cases construing Minn. Stat. § 303.13 (1980), specifically *Fourth Northwestern Nat'l Bank of Minneapolis v. Hilson Industries, Inc.,* 264 Minn. 110, 117 N.W.2d 732 (1962) and *Marshall Egg Transp. Co. v.* *Bender-Goodman Co., Inc.,* 275 Minn. 534, 148 N.W.2d 161 (1967). However, since those two cases are reasoned in terms of the quantity and quality of a nonresident's contacts with the forum—clear indications of consideration of the constitutional issue—*Guardian* is useful in viewing the constitutional dimensions of the present case as well.