Harold **LEACH**, et al., Respondents,

v.

**CURTIS OF IOWA, INC.,** and Curtis, Inc., petitioners, **Appellants,**

Barry **Sather,** individually and d.b.a. Crystal Trucking Company and/or d.b.a. Barry Sather Truck Service, Respondents.

No. C1–86–1087.

Court of Appeals of Minnesota.

Jan. 27, 1987.

---

Robert W. Gislason, Gislason, Martin & Varness, Edina, for Harold Leach, et al.

Eric J. Magnuson, Jeanne Unger, Brian A. Wood, Jeremiah P. Gallivan, Rider, Bennett, Egan & Arundel, Minneapolis, for Curtis of Iowa, Inc. and Curtis, Inc.

James J. Galman, Mary A. Rice, Jardine, Logan & O'Brien, St. Paul, for Barry Sather, individually and d.b.a. Crystal Trucking Company and/or d.b.a. Barry Sather Truck Service.

Heard, considered and decided by HUSPENI, P.J., and LANSING and FORSBERG, JJ.

## OPINION

LANSING, Judge.

This is an appeal of an order denying the motion of Curtis, Inc., and Curtis of Iowa, Inc., to dismiss the complaint against them for lack of personal jurisdiction and insufficient service of process. We reverse.

## FACTS

Harold Leach was injured while riding as a passenger [1] in a tractor trailer transporting pork from Iowa to California. Leach and his wife, Minnesota residents, brought this personal injury action against the driver's employer and the tractor owner, Barry Sather and his trucking company; the trailer owner, Curtis of Iowa; and its parent company and lessee of the tractor, Curtis, Inc.

---

1. Federal safety regulations for motor carriers prohibit transportation of hitchhikers or individuals not authorized by the licensed carrier. In this sense Leach was an unauthorized passenger.

Curtis of Iowa is an Iowa corporation engaged in over-the-road delivery of meat and perishable products. Its principal place of business is Iowa. Curtis, Inc., is a Delaware corporation engaged in over-the-road trucking. Its principal place of business is Colorado. Curtis, Inc., holds authority to haul goods from Sioux City, Iowa, to California.

Barry Sather owns Barry Sather Truck Service, Inc., a Minnesota corporation. Sather purchased his first truck in 1973, intending to lease it to a transport company. He called Curtis of Iowa to offer to lease the truck and later traveled to their headquarters in Sioux City to negotiate the lease.

The lease provided for delivery or transfer of Sather's truck in Sioux City, Iowa, a point of origin served by Curtis, Inc. The Sather employee would then drive the loaded truck to its final destination and Sather would receive a percentage of the revenue generated in transporting the commodity from Sioux City to its final destination. Payments for lease of the truck were payable in Sioux City.

As Sather acquired additional tractors and trailers, he entered into other leases with Curtis, Inc. Sather initiated the contact for a total of six leases and traveled to Iowa to negotiate and execute each lease. No representative of Curtis [2] ever came to Minnesota. The contracts between Sather and Curtis are no longer in force.[3]

The tractor involved in the accident was driven by Duane Hackala. Hackala was hired by Sather and approved by Curtis.

The tractor, owned by Sather, was registered in Nebraska and garaged and maintained by Sather in Minnesota. In preparation for the trip, Hackala called Curtis' dispatcher to obtain a load. Hackala then drove the tractor to Sioux City, where it was hooked up to a Curtis trailer bound for California. A short distance before it reached its destination in California, the truck went off the road and turned over. Hackala was killed and Leach was injured.

Approximately six years later, Leach initiated this suit. A copy of the summons and complaint was served on Barry Sather and the Minnesota Secretary of State. Curtis is not registered with the Secretary of State to do business in Minnesota.

## ISSUE

Do Curtis, Inc., and Curtis of Iowa, Inc., have sufficient contacts with Minnesota to permit exercise of personal jurisdiction?

## ANALYSIS

### I

The proper exercise of in personam jurisdiction over a nonresident defendant requires (a) compliance with appropriate state legislation enacted to provide the court with jurisdiction, and (b) the exercise of jurisdiction under circumstances which do not offend the due process clause of the United States Constitution. *David M. Rice, Inc. v. Intrex, Inc.*, 257 N.W.2d 370, 372 (Minn.1977). In actions where jurisdiction is asserted because the defendant is "transacting business" under Minn.Stat. § 543.19, subd. 1(b),[4] the statutory and con-

---

**2.** For simplicity, Curtis of Iowa and Curtis, Inc., will be referred to singularly as "Curtis."

**3.** The expiration of the leases does not affect the jurisdictional question. A foreign corporation which has ceased to do business in a state is still subject to service of process in suits on causes of action which arose while business was carried on in the state. *Electrical Equipment Co. v. Daniel Hamm Drayage Co.*, 217 F.2d 656 (8th Cir.1954).

**4.** Minn.Stat. § 543.19, subd. 1(b) (1978), provides:

As to a cause of action arising from any acts enumerated in this subdivision, a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over any foreign corporation or any nonresident individual, or the individual's personal representative, in the same manner as if it were a domestic corporation or the individual were a resident of this state. This section applies if, in person or through an agent, the foreign corporation or nonresident individual:

\* \* \* \* \* \*

(b) Transacts any business within the state, or

\* \* \* \* \* \*

stitutional requirements for exercise of jurisdiction are the same. *Marquette National Bank v. Norris,* 270 N.W.2d 290, 294 (Minn.1978). The controlling question is whether Curtis' contacts with Minnesota are sufficient to justify assumption of personal jurisdiction under the constitutional standards of due process of law applied by the United States Supreme Court.

 The constitutional analysis centers on whether the defendant purposefully established "minimum contacts" in the forum state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The foreseeability that is critical to due process analysis is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)). This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or the unilateral activity of another party or a third person. *Id.* (citing *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d 404 (1984). The burden is on the plaintiff to prove the minimum contacts necessary to satisfy due process.

 Determining whether a nonresident defendant has purposely availed itself of the privilege of conducting activities in the forum state depends primarily on three factors: the quantity of the nonresident's contacts with the forum, the nature and quality of the contacts, and the source and connection of those contacts to the cause of action. *Aftanase v. Economy Baler Co.,* 343 F.2d 187, 197 (8th Cir.1965); *Hardrives, Inc. v. City of LaCrosse,* 307 Minn. 290, 294, 240 N.W.2d 814, 817 (1976). The

first two factors weigh against the assertion of jurisdiction in this case.

### *Quantity of Contacts*

It is uncontested that Curtis owns no property and has no offices or salespeople in Minnesota. Curtis' connection to Minnesota is the lease agreement between Curtis and Sather. The lease arrangement was initiated by Sather, who traveled to Iowa where the contract was executed. The contract states that the transfer of equipment takes place in Sioux City, Iowa. All the lease payments were to be made at Sioux City, Iowa, and the amount to be paid was determined on a percentage basis in relation to Sioux City, Iowa.[5]

To support the allegation that Curtis is doing business in Minnesota, Leach relies on a statement contained in Barry Sather's deposition. The statement relates to the point of origin for Sather's trips:

Q: Okay. So your trips can originate from almost anywhere in the country then?

A: They normally didn't—

Q: So your dispatchers would dispatch your drivers from Minnesota to California, from Nevada to Iowa?

A: That's—basically we were pretty much in strictly the Minneapolis or Sioux City area, Worthington, someplace in between, and to California.

Q: So most of your trips were between Minnesota and California?

A: Right.

Q: To and from Minnesota and California?

A: Right.

Q: Is that right?

A: Right, or Iowa.

Leach claims that the statement establishes that *hauling* occurred between Minnesota and California because loads were picked up and dropped off in California or vice versa. Although Sather says his *trips*

---

5. Paragraph 5 of the lease, addressing legal responsibility for damages caused by the operation of the leased trailer, does not involve the issue of where Curtis is subject to legal proceedings.

ran from Minnesota or Iowa to and from California, he does not say the trucks were carrying loads when they left or entered Minnesota. The only record evidence of the procedure is the trip on which Leach was injured. The tractor-trailer ran empty from Minneapolis to Sioux City, Iowa, where it picked up a loaded Curtis trailer. The tractor-trailer hauled the load to California, where the accident occurred. Although Sather garaged and maintained his equipment in Minnesota, there is nothing in the record to show that the Sather trucks ever hauled loads in Minnesota. The consistent connection between Curtis and Minnesota is the drivers who lived in Minnesota. They were required to call the Iowa dispatcher when they wanted work. However, this is a relationship with residents of the forum, not the forum itself.

In evaluating the quantity of contacts Curtis had with Minnesota, "the critical focus in * * * [the] jurisdictional analysis must be on the relationship among the defendant, the forum and the litigation." *West American Insurance Co. v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn.1983) (quoting *Rush v. Savchuk,* 444 U.S. 320, 327, 100 S.Ct. 571, 576, 62 L.Ed.2d 516 (1980)). This relationship is defined by the nonresident's contacts with the forum state, not its contacts with residents of the forum. *Id.*

### Nature and Quality of Contact

Curtis' relationship with Sather was not initiated by Curtis. The evidence is uncontroverted that Curtis' contacts with Minnesota were responsive in nature. Like the nonresident in *Dent-Air, Inc. v. Beech Mountain Air Service,* 332 N.W.2d 904 (Minn.1983), Curtis did not conduct business in Minnesota or initiate contact with any Minnesota resident. In both cases the leases signed by the nonresidents were initiated by the forum residents and negotiated and executed outside of Minnesota. Sather sought out Curtis, initiated the lease agreement, arranged the purchase and licensing of equipment, and traveled to Iowa for the negotiation and signing of each

lease. *See also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ The record does not provide a prima facie showing that Curtis purposefully or intentionally availed themselves of the privilege of conducting business in Minnesota. Leach's service of process on Curtis is insufficient for the same reasons. The authority to serve a nonresident corporation through the Minnesota Secretary of State, Minn.Stat. § 303.13, is constrained by constitutional requirements of purposeful minimum contacts. *See Pendzimas v. Eastern Metal Products Corp.,* 218 F.Supp. 524, 529 (D.Minn.1961).

### DECISION

The trial court erred in finding Minnesota jurisdiction over Iowa and Delaware corporations, because they lacked sufficient contacts with the forum state. The service of process on the Minnesota Secretary of State was insufficient.

Reversed.