**WALKER MANAGEMENT, INC., Respondent,**

v.

**FHC ENTERPRISES, INC., Appellant.**

No. C0–89–995.

Court of Appeals of Minnesota.

Oct. 24, 1989.

Review Denied Dec. 15, 1989.

Mark R. Miller, David G. Ronald, Hessian, McKasy & Soderberg, Minneapolis, and John M. O'Malley, Winston & Strawn, Chicago, Ill., for appellant.

Alfred H. Edwall, Jr., Timothy P. Mahoney, Robins, Kaplan, Miller & Ciresi, Minneapolis, for respondent.

Heard, considered, and decided by WOZNIAK, C.J., and SCHUMACHER and GARDEBRING, JJ.

## OPINION

WOZNIAK, Chief Judge.

The trial court denied appellant's motion seeking dismissal of the complaint for lack of personal jurisdiction and this appeal followed. We reverse.

## FACTS

Appellant FHC Enterprises, Inc. (FHC) is an Illinois corporation engaged in the business of managing The Benchmark Cooperative, a housing project for senior citizens in Hoffman Estates, Illinois, a suburb of Chicago. Respondent Walker Management, Inc. (Walker) is a Minnesota corporation engaged in the business of providing consulting, marketing, and managing services to senior citizen life and health care providers.

The relationship between FHC and Walker began in the summer of 1986 with incidental contact at seminars between Karen Struve, president of Walker, and Michael Gillman, FHC's representative. In August 1986, Struve and Walker's vice president traveled to FHC in Illinois to solicit FHC's business. In March 1987, Struve again returned to FHC's headquarters in Illinois to deliver a written proposal for a marketing agreement and in April 1987, Gillman accepted Walker's proposal in FHC's headquarters. In July 1988, the parties entered into a management agreement which specifically provided that it was to be "gov-

erned by and interpreted and enforced" according to Illinois law.

FHC has no offices or staff in Minnesota, has never sent sales representatives into Minnesota, is not registered in Minnesota as a foreign corporation, owns no property in Minnesota, and has never filed Minnesota corporate income tax returns or information returns for the Minnesota Secretary of State.

Walker did not maintain a marketing office in Illinois and is based in Minneapolis, Minnesota. All of Walker's employees with marketing expertise are located in Minnesota, a large portion of the work they completed for FHC was done in Minnesota, and the marketing services were implemented in Illinois.

There were numerous telephone conversations between representatives of FHC and Walker, in addition to correspondence, payments, and other documents which were sent by FHC from Illinois to Walker in Minnesota. In June 1987, two representatives from FHC traveled to Minnesota to view Walker's operations, meet with Walker personnel, and tour Walker properties.

In addition to contracting with Walker, FHC contracted with Harris & West, a Minnesota corporation, from July to October 1988. FHC accepted all of the services in Illinois and never came to Minnesota to negotiate or contract with Harris & West. Three Minnesota vendors, Kosmas Advertising, Inc., General Litho Services, and Allison Sales, had contracts directly with Walker to provide services in connection with The Benchmark (FHC), but FHC had no contracts at anytime with the vendors.

All of the work and proposed work which Walker was to perform for FHC concerned The Benchmark housing project in Hoffman Estates. Walker employees regularly traveled to Illinois and spent extended periods of time in Illinois in connection with The Benchmark. Some Walker employees actually resided in Illinois. No effort was made to market The Benchmark in Minnesota.

On October 6, 1988, the president of FHC wrote to Walker purporting to terminate the marketing and management agree-

ments. FHC filed a complaint against Walker in Illinois alleging a breach of the marketing agreement and Walker subsequently filed an action alleging a breach of the marketing and management agreement in Hennepin County. FHC moved to dismiss Walker's complaint for lack of personal jurisdiction which was denied. This appeal followed.

## ISSUE

Were FHC's contacts with Minnesota sufficient to meet the constitutional minimum required to impose jurisdiction?

## ANALYSIS

■ When reviewing a motion to dismiss for lack of jurisdiction, this court must take as true the facts alleged in plaintiff's complaint and supporting affidavit. *Marquette National Bank of Minneapolis v. Norris,* 270 N.W.2d 290, 292 (Minn.1978).

Minnesota's long-arm statute provides that a Minnesota court may exercise personal jurisdiction over a foreign corporation if that corporation transacts any business within the state except when Minnesota has no substantial interest in providing a forum extending jurisdiction or the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice. Minn. Stat. § 543.19, subd. 1 (1988).

■ In interpreting this statute, the courts have stated that the scope of such long-arm jurisdiction should not be extended so that its reach "obliterates state lines and * * * lead[s] to the result that anyone who deals with a Minnesota resident in any way * * * can be brought into the Minnesota courts to respond to a suit." *McQuay, Inc. v. Samuel Schlosberg, Inc.,* 321 F.Supp. 902, 906 (D.Minn.1971).

Due process requires a plaintiff to show that the defendant has had sufficient contacts with a state so that requiring them to defend in the state does not violate traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158,

90 L.Ed. 95 (1945). To have minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The nonresident must be able to reasonably anticipate being haled into the state's court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

The Minnesota Supreme Court adopted the five-factor test set out in *Aftanase v. Economy Baler Co.*, 343 F.2d 187, 197 (8th Cir.1965), to determine whether minimum contacts exist. The test requires the court to evaluate:

(1) The quantity of the contacts with the forum state,

(2) The nature and quality of the contacts,

(3) The source and connection of the cause of action with these contacts,

(4) The interest of the state providing a forum,

(5) The convenience of the parties.

*Vikse v. Flaby*, 316 N.W.2d 276, 282 (Minn. 1982). The first three factors are primary factors and the last two require lesser consideration. *Dent–Air, Inc. v. Beech Mountain Air Service, Inc.*, 332 N.W.2d 904, 907 (Minn.1983).

### 1. The Quantity of Contacts

FHC entered into a contract with Walker in April 1987 and their relationship continued until October 6, 1988, when FHC purported to terminate the relationship. During this one and one-half years, FHC had contact with Walker primarily through the mail, by telephone, and by forwarding of funds, none of which can support a finding of personal jurisdiction. *See Mountainaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651 (8th Cir.1982); *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450 (8th Cir.1977); *Fourth Northwestern National Bank of Minneapolis v. Hilson Industries, Inc.*, 264 Minn. 110, 117 N.W.2d 732 (1962). FHC employees were present in Minnesota on only one occasion.

Walker contracted with three Minnesota vendors to provide services for FHC. Each of these vendors billed FHC or The Benchmark for some of the services they provided to them, and FHC or The Benchmark paid the vendors through the mail. FHC has not had sufficient quantity of contact with Minnesota to warrant granting jurisdiction.

### 2. The Nature and Quality of the Contacts

In essence, Walker is the "seller" of services and FHC is the "buyer" of those services. There is a distinct difference between purchasers of goods and services from Minnesota residents as opposed to sellers of goods and services to Minnesota residents.

Walker initiated the business relationship with FHC which led to a contract between the parties. Walker visited FHC in Illinois in order to solicit their business and prepared a written proposal which FHC accepted.

During the course of the one and one-half year period of the contract with Walker, FHC entered into contracts with other vendors as a result of Walker's recommendation and relationship with the vendors.

The supreme court has found that a defendant's contacts with Minnesota are insufficient to warrant jurisdiction when the plaintiff has initiated the business contacts and the defendant did not purposefully avail itself of Minnesota law. *Dent–Air*, 332 N.W.2d at 907–08. This case is similar in that each and every significant element in the formation of the agreement between FHC and Walker (presentation, negotiation, and execution) occurred outside Minnesota.

Here, FHC's contacts with Minnesota are so slight that FHC could not reasonably have expected to have been "haled into court" in Minnesota to defend an action brought by the seller of services, particularly when all of Walker's services were to be performed in the Chicago area.

The record is devoid of FHC's "purposely avail[ing] itself of the privilege of conducting business within the forum state, thus invoking the benefits and protection of its

laws." *Hanson,* 357 U.S. at 253, 78 S.Ct. at 1239.

3. The Source and Connection of FHC's Contacts With Minnesota.

As previously noted, there is a distinction between purchasers of goods or services from Minnesota residents as opposed to sellers of goods or services to Minnesota residents.

*Branstrom & Associates, Inc. v. Community Memorial Hospital,* 296 Minn. 366, 209 N.W.2d 389 (1973), involved a contract for the rendering of architectural services by a Minnesota plaintiff who prepared layout plans for a proposed x-ray room in connection with construction of an addition to defendant's hospital in North Dakota. The Minnesota Supreme Court affirmed the dismissal of the case, finding insufficient contacts to support jurisdiction, notwithstanding the fact that the majority of services rendered by plaintiff were performed in Minnesota, and notwithstanding that the relationship between the architect and the hospital took place over at least a one-year period. In dismissing the case for lack of jurisdiction, the court noted that:

> The general tendency of courts to require less in the way of sales activity to bring a foreign corporation within the jurisdiction of a state has not been accompanied by any parallel lessening of requirements as to purchasing activities.

*Id.* at 369, 209 N.W.2d at 392 (quoting *Waltham Precision Instrument Co. v. McDonnell Aircraft Corp.,* 203 F.Supp. 539, 541 (D.Mass.1962)).

4. & 5. Minnesota's Interest in the Litigation; Convenience of the Parties

The factors of state interest and the convenience of the parties are of secondary importance. In *Scullin Steel Co. v. National Railway Utilization Corp.,* 676 F.2d 309, 314 (8th Cir.1982), the court stated that these ancillary factors "cannot alone provide the minimum contacts required by due process." Walker's inability to establish jurisdiction under any of the factors discussed above necessarily requires a conclusion that Walker's assertion of jurisdiction must fail regardless of the last two factors.

However, we note that all of Walker's efforts were directed, not to Minnesota residents, but to residents in and around the Chicago area. We find no "significant interest" in providing a forum for Walker's claim against FHC since FHC is not acting as a Minnesota resident and is not regularly conducting its business here. There are insufficient contacts to warrant jurisdiction in Minnesota.

We also note that the lawsuit brought by FHC against Walker is still pending in Cook County. Nothing in Illinois law prevents Walker from filing a counterclaim in that action. Thus, Walker has a forum available in which to present and litigate its claims against FHC. The convenience of all parties dictates that all of the issues be resolved at one time.

## DECISION

The trial court erred by holding that Minnesota has jurisdiction over FHC. Respondent's complaint must be dismissed.

Reversed.

SCHUMACHER, Judge (dissenting).

I respectfully dissent.

When there is a close question, doubts are to be resolved in favor of extending jurisdiction. *Hardrives, Inc. v. City of La-Crosse, Wisconsin,* 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976).

Under the five-factor test adopted in *Vikse v. Flaby,* 316 N.W.2d 276, 282 (Minn. 1982), the quantity, nature, and quality of the contacts FHC had with Minnesota are sufficient to support extending personal jurisdiction. FHC communicated with Walker extensively through the mail and almost daily over the telephone. Employees from FHC met with Walker employees in Minneapolis, and virtually all of the work Walker performed for FHC was done in their Minneapolis office. In addition, a choice-of-law clause is not sufficient to confer jurisdiction. *Dent–Air, Inc. v. Beech*

*Mountain Air Service, Inc.,* 332 N.W.2d 904, 908 (Minn.1983).

I would affirm the trial court.