Katherine GRIFFIS, Respondent,

v.

Marianne LUBAN, Petitioner, Appellant.

No. C3–01–296.

Supreme Court of Minnesota.

July 11, 2002.

Rehearing Denied Aug. 14, 2002.

Faegre & Benson LLP, John P. Borger, Eric E. Jorstad, C. David Flower, Patricia R. Stembridge, Minneapolis, for Appellant.

C. Peter Erlinder, St. Paul, Ralph Overholt, Hopkins for Respondent.

## OPINION

BLATZ, Chief Justice.

Respondent Katherine Griffis brought suit against appellant Marianne Luban in Jefferson County, Alabama, alleging defamation and invasion of privacy arising out of statements made by Luban on the internet. Luban did not appear in the Alabama action, and the Alabama district court entered a default judgment for $25,000 in damages and issued an injunction prohibiting Luban from making certain statements in the future. Griffis filed the Alabama judgment in Ramsey County District Court, and Luban brought a motion to vacate, challenging the jurisdiction of the Alabama court. The Ramsey County Dis-

trict Court upheld personal jurisdiction of the Alabama court over Luban, and the court of appeals affirmed. We reverse.

Respondent Katherine Griffis, an Alabama resident, has taught noncredit courses in ancient Egyptian history and culture at the University of Alabama, Birmingham. Griffis also works as a self-employed consultant. Appellant Marianne Luban, a Minnesota resident, maintains a nonprofessional interest in the history and culture of ancient Egypt. Both Luban and Griffis have participated in an internet newsgroup on archeology, the *sci.archaeology* newsgroup, since at least 1996. A newsgroup is a forum for internet users that addresses a specific topic and allows participants to exchange information and engage in discussions or debate by "posting" messages on the website. The *sci.archaeology* newsgroup is public and so messages posted there can be accessed anywhere by any person with internet access.

During the latter part of 1996 a disagreement arose between Luban and Griffis relating to the subject of Egypt and Egyptology. In December 1996 Luban posted a message challenging Griffis's credentials as an Egyptologist, and accusing Griffis of obtaining her degree from a "box of Cracker Jacks." Griffis states that she responded by citing her credentials in an electronic message sent directly to Luban. The disagreement continued into 1997, with both Luban and Griffis continuing to post messages relating to their disagreement on the *sci.archaeology* newsgroup. In May 1997, Griffis's attorney sent a letter to Luban demanding that Luban refrain from attacking Griffis's character and professional reputation. The letter threatened legal action if Luban did not retract the prior statements and refrain from future attacks. Although Griffis asserts that Luban continued posting defamatory messages after receiving this letter, the record before us does not include any statements made by Luban, whether on the *sci.archaeology* newsgroup or elsewhere, after March, 1997.

In September 1997, Griffis brought a defamation action against Luban in Alabama state court. Griffis's complaint alleged that Luban posted statements on the newsgroup asserting that Griffis obtained membership in the International Association of Egyptologists and inclusion on other lists of Egyptologists by misrepresenting her qualifications, that Griffis was a liar, was not affiliated with the University of Alabama, did not have a juris doctor degree, and that Griffis's consulting business was not legitimate. Because Luban was advised by her attorney that the Alabama state court did not have personal jurisdiction over her, she did not answer the complaint or make any appearance in the Alabama action. On December 17, 1997, the Alabama court entered a default judgment against Luban. The court assessed damages in the amount of $25,000 and also issued an injunction specifically enjoining Luban from publishing certain statements in the future.[1]

On May 5, 1998, Griffis filed the Alabama judgment in Ramsey County District Court in order to enforce its terms against Luban. Luban moved to vacate the judgment on the basis that the Alabama court lacked personal jurisdiction over her. A referee initially granted Luban's motion,

---

1. The injunction prohibited Luban from publishing in any form—including on the internet, world wide web and e-mail—statements asserting or implying that Griffis is a liar, a phony, a con-artist or scam artist, that she has falsified her credentials as an Egyptologist, that she is not affiliated with the University of Alabama, that she does not have a juris doctor degree, and that she is not engaged in a legitimate consulting business.

but on reconsideration concluded that the Alabama court had personal jurisdiction over Luban and ordered entry of a Minnesota court judgment against Luban. On appeal, the court of appeals vacated the referee's order because it had not been confirmed or countersigned by a district court judge. In the interim, Luban petitioned for bankruptcy, and on March 15, 2000, the bankruptcy court discharged the $25,000 judgment from the Alabama court.

In March 2000, Luban renewed her motion in district court to vacate the Alabama judgment, and Griffis filed a cross-motion to enforce the Alabama injunction. The court found that the Alabama district court had personal jurisdiction over Luban and therefore the judgment must be given full faith and credit. Judgment was entered on December 21, 2000. On Luban's appeal, the court of appeals affirmed, ruling that the district court did not err in its determination that the Alabama court properly exercised personal jurisdiction over Luban. *Griffis v. Luban*, 633 N.W.2d 548, 553 (Minn.App.2001). The court of appeals concluded that Luban was subject to the Alabama court's jurisdiction because she made potentially defamatory statements that were being read in Alabama and had knowledge of the effect of those statements in Alabama. *Id.* Luban sought and was granted review in this court.

■ The question presented is whether the Ramsey County District Court correctly determined that the Alabama district court had personal jurisdiction over Luban so that the Alabama judgment is entitled to full faith and credit in the Minnesota courts. This court recognizes the right of a defendant to contest an action brought on the basis of a foreign court's judgment by demonstrating that the foreign court rendered the judgment in the absence of personal jurisdiction over the defendant. *David M. Rice, Inc. v.*

*Intrex, Inc.*, 257 N.W.2d 370, 372 (Minn. 1977). Such judgments are not entitled to full faith and credit in Minnesota. Uniform Enforcement of Foreign Judgments Acts, Minn.Stat. § 548.27 (2000); *Hutson v. Christensen*, 295 Minn. 112, 117, 203 N.W.2d 535, 538 (1972). Minnesota courts will uphold a foreign court's exercise of personal jurisdiction over a nonresident defendant when two requirements are met: (1) compliance with the foreign state's law providing jurisdiction, and (2) the exercise of jurisdiction under circumstances that do not offend the Due Process Clause of the federal constitution. *Intrex*, 257 N.W.2d at 372. Whether personal jurisdiction exists is a question of law and therefore our review is de novo. *See V.H. v. Estate of Birnbaum*, 543 N.W.2d 649, 653 (Minn. 1996); *see also Matson v. Matson*, 310 N.W.2d 502, 506 (Minn.1981) (applying de novo review to issue of whether foreign judgment entitled to full faith and credit).

■ For the first requirement, Minnesota courts apply the law of the foreign state, as construed by that state's courts. *See David M. Rice, Inc.*, 257 N.W.2d at 372. Alabama law extends personal jurisdiction over nonresident defendants to the full extent permitted by due process. Ala. R. Civ. P. 4.2(a)(1)(B); *DeSotacho, Inc. v. Valnit Industries, Inc.*, 350 So.2d 447, 449–50 (Ala.1977). Because Alabama provides jurisdiction as broad as due process will allow, the first requirement is subsumed by the second, and we need only determine whether Alabama's exercise of personal jurisdiction over Luban was consistent with due process.

■ The Due Process Clause of the Fourteenth Amendment limits the power of a state court to exercise personal jurisdiction over a nonresident defendant to circumstances where the defendant has "minimum contacts" with the state so that "maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.' " *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Where the defendant had "continuous and systematic" contacts with the forum state, the court can exercise "general" jurisdiction over a nonresident defendant for all purposes, even for a claim that is not related to the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (quoting *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Griffis does not contend that the Alabama courts could exercise general jurisdiction over Luban. Where the nonresident defendant's contacts with the forum state are not sufficient for general jurisdiction, the defendant may nonetheless be subject to "specific" jurisdiction—that is, jurisdiction over a claim that allegedly arose out of the defendant's contacts with the forum. *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 411 (Minn.1992). Griffis contends that Luban had sufficient contacts with Alabama, out of which her claims arose, to support the Alabama court's exercise of specific jurisdiction.

 In judging minimum contacts for purposes of assessing the validity of specific jurisdiction, a court focuses on the "relationship among the defendant, the forum, and the litigation." *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414–16, 104 S.Ct. 1868 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)); *West American Ins. Co. v. Westin, Inc.,* 337 N.W.2d 676, 679 (Minn.1983). For the minimum contacts requirement to be satisfied, the defendant must have "purposefully avail[ed]" herself of the privilege of conducting activities within the jurisdiction. *Imo Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir. 1998) (quoting and modifying *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). The defendant's conduct and connections with the forum state must be such that the defendant "should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The Supreme Court has explained that specific jurisdiction may be found where the nonresident defendant has " 'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), and *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414).

In asserting that the Alabama district court had personal jurisdiction over Luban, Griffis relies in particular, as did the courts below, on *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). In *Calder* the Supreme Court approved a test that had been employed by the California courts in that case for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum. *Id.* at 787 & n. 6, 104 S.Ct. 1482. Rather than focusing only on the defendant's conduct within or contacts with the forum, the so-called "effects test" approved in *Calder* allowed long-arm jurisdiction to be based on the effects within the forum of tortious conduct outside the forum. *Id.*

*Calder* involved an allegedly libelous *National Enquirer* article written and edited by the defendants in Florida, but concerning the California activities of a Cali-

fornia resident. *Id.* at 784–85, 104 S.Ct. 1482. Although the *Enquirer* was distributed nationally, it had its largest circulation in California. *Id.* at 784–85, 104 S.Ct. 1482. Plaintiff was an entertainer whose profession, the Court pointed out, was centered in California. *Id.* at 788, 104 S.Ct. 1482. She brought suit in California against the Florida-based publication, its distributing company, and the reporter and editor of the article. *Id.* at 785–86, 104 S.Ct. 1482. The reporter and editor moved to quash service of process for lack of personal jurisdiction. *Id.* at 785–85, 104 S.Ct. 1482. Although the investigative contacts of one defendant with California, including a visit and several phone calls, were alleged as a basis for jurisdiction, the Court found it unnecessary to consider those direct contacts with the forum. *Id.* at 786–87 & n. 6, 104 S.Ct. 1482. Instead, the Court held that California had personal jurisdiction over the reporter and editor because their Florida conduct was "expressly aimed" at California, knowing that the harmful effects would be felt primarily there. *Id.* at 789, 104 S.Ct. 1482. The Court emphasized that the alleged tort was not "mere untargeted negligence." *Id.* Under these circumstances, the Court found that defendants "must 'reasonably anticipate being haled into court'" in California for their out-of-state actions. *Id.* at 790, 104 S.Ct. 1482 (quoting *World–Wide Volkswagen Corp.,* 444 U.S. at 297, 100 S.Ct. 559).

Courts have come to varying conclusions about how broadly the "effects test" approved in *Calder* can be applied to find jurisdiction. The Seventh Circuit Court of Appeals has construed *Calder* very broadly, concluding that "the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir.1997). However, the other federal courts of appeals that have

considered the issue have rejected this expansive view that *Calder* supports specific jurisdiction in a forum state merely because the harmful effects of an intentional tort committed in another jurisdiction are primarily felt in the forum. *E.g., Imo Indus.,* 155 F.3d at 265. Thus, courts have consistently refused to find jurisdiction based on *Calder* merely because the plaintiff was located in the forum state and therefore felt the effects of the alleged intentional tortious conduct there. *E.g., id.; ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 625–26 (4th Cir.1997); *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1080 (10th Cir.1995); *Southmark Corp. v. Life Investors Inc.,* 851 F.2d 763, 773 (5th Cir.1988). Instead, the courts have construed *Calder* as requiring more than mere effects in the forum state. For example, the Ninth Circuit reasoned that "'something more'" than mere effects is needed and found that something more in the "'express aiming'" language of *Calder. Bancroft & Masters v. Augusta Nat'l, Inc.* 223 F.3d 1082, 1087 (9th Cir.2000) (quoting *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir.1998); *Calder,* 465 U.S. at 789, 104 S.Ct. 1482). But the court took a broad view of express aiming by concluding that the requirement is satisfied simply by "wrongful conduct [outside the forum] individually targeting a known forum resident." *Id.*

The Eighth Circuit adopted a narrower interpretation of *Calder,* stating that it was more than "mere effects" that supported the Supreme Court's holding. *Hicklin Eng'g, Inc. v. Aidco, Inc.,* 959 F.2d 738, 739 (8th Cir.1992). The court found that the Iowa court's jurisdiction did not extend over a Michigan company that sent allegedly defamatory letters to customers of the Iowa-based plaintiff company. *Id.* The customers to whom the letters were sent were all located outside of Iowa. *Id.* The

court stated that while the defendant's statements to the non-Iowa customers were intended to promote the defendant's product to the detriment of the plaintiff's and therefore might have an adverse effect on the Iowa plaintiff, this effect alone was not sufficient to establish jurisdiction. *Id.*

■ Within the spectrum of differing circuit court interpretations of *Calder*, we believe the most cogent analysis of the *Calder* effects test is that of the Third Circuit in *Imo Industries*. In *Imo Industries*, the circuit court expressed concern over the possible breadth of *Calder*, asking whether under *Calder* a court can automatically infer that an out-of-state defendant can anticipate being haled into the forum from the fact that the defendant knew that plaintiff resided in the forum. 155 F.3d at 262–63. After examining how a number of other courts construed *Calder*, the Third Circuit concluded that the *Calder* effects test is not satisfied by the "mere allegation that the plaintiff feels the effect of the defendant's conduct in the forum because the plaintiff is located there." 155 F.3d at 263. Instead, the court stated that *Calder*'s holding "cannot be severed from its facts." 155 F.3d at 261. The court explained that in *Calder* the Supreme Court relied on three principal findings in reaching its conclusion that the California court properly exercised jurisdiction over the nonresident defendants, and the circuit court incorporated those findings into a three-prong analysis for application of the *Calder* effects test. 155 F.3d at 261. The test requires the plaintiff to show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity. *Id.* at 265–66. Significantly, the court emphasized that to satisfy the third prong, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and *point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." Id.* at 266 (emphasis added).

We, too, are cautious about applying *Calder* too broadly. Although the Supreme Court has engaged in little further discussion of *Calder*, in one post-*Calder* decision the Court did make it clear that foreseeability of effects in the forum is not itself enough to justify long-arm jurisdiction. The Court explained:

[T]he constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State. *International Shoe Co. v. Washington*, [326 U.S.] at 316, 66 S.Ct. 154. Although it has been argued that foreseeability of causing *injury* in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a "sufficient benchmark" for exercising personal jurisdiction. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S., at 295, 100 S.Ct. 559. Instead, "the foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.*, at 297, 100 S.Ct. 559.

*Burger King Corp.*, 471 U.S. at 474, 105 S.Ct. 2174 (footnote omitted). If foreseeability of injury in the forum is not enough, it follows that something more than defendant's knowledge that the plaintiff is a resident of the forum and will feel the

effects of the tortious conduct there must be necessary to satisfy the effects test. We conclude that something more than mere effects in the forum state is required, and agree with the Third Circuit that the Supreme Court did not "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state." *Imo Indus.*, 155 F.3d at 265. Broad applications of the effects test, such as those of the Seventh and Ninth Circuits, cast too wide a net and incorrectly disregard the factual underpinnings of the Court's holding in *Calder.* We adopt the three-prong analysis articulated by the Third Circuit in *Imo Industries*, as it properly synthesizes the bases of the Court's decision in *Calder* without effecting an overly broad application.

 The critical question in this case turns on the third prong, whether the defendant expressly aimed the allegedly tortious conduct at the forum such that the forum was the focal point of the tortious activity.[2] As noted above, to satisfy the third prong, the plaintiff must show that "the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that the defendant expressly aimed its tortious conduct at the forum." *Imo Indus.*, 155 F.3d at 266.

Griffis argues that Luban directed the defamation at the Alabama forum because she targeted her messages at Griffis, whom she knew to be an Alabama resident, and because Luban knew that messages posted on the *sci.archaeology* newsgroup could be read anywhere in the world and in fact were read by Griffis in Alabama. Griffis further contends that Luban's defamatory statements had "deleterious effects" on Griffis's consulting business and her professional reputation in Alabama. The district court agreed with Griffis, stating that Luban "never denied that she knew Plaintiff was located in Alabama, and that her allegedly defamatory messages would have an 'effect' on Plaintiff's professional career in Alabama."

While the record supports the conclusion that Luban's statements were intentionally directed at Griffis, whom she knew to be an Alabama resident, we conclude that the evidence does not demonstrate that Luban's statements were "expressly aimed" at the state of Alabama.[3] The parties agree that Luban published the allegedly defamatory statements on an internet newsgroup accessible to the public, but nothing in the record indicates that the statements were targeted at the state of Alabama or at an Alabama audience beyond Griffis herself. The newsgroup on which Luban posted her statements was

---

**2.** Because all three prongs must be satisfied for jurisdiction to attach, we need address the other two prongs only if this requirement is met.

**3.** Luban concedes that she knew Griffis lived in Alabama. But this fact alone is insufficient to conclude that Luban expressly aimed her allegedly tortious conduct at the Alabama forum. We look to the record for other evidence that the Alabama forum was the focal point of the defamatory statements. The record contains only two messages posted by Luban on the *sci.archaeology* newsgroup that identify the Alabama forum in any way. In

one, Luban stated Griffis was "from the great state of Alabama." In another, in response to a message by Griffis signed University of Alabama at Birmingham, Special Studies, Luban asked: "What are special studies and what have you to do with them." In response, Griffis posted, "Now for the record, I am an instructor with the University of Alabama at Birmingham, Department of Special Studies, and have been for over 17 years." Luban also acknowledges that she made one phone call to the University of Alabama, in which she asked a receptionist whether Griffis was employed there.

organized around the subjects of archeology and Egyptology, not Alabama or the University of Alabama academic community. According to Griffis, Luban's messages were widely read by her colleagues—the other amateur Egyptologists who participated in the *sci.archaeology* newsgroup. But Griffis has not presented evidence that any other person in Alabama read the statements. Nor has she asserted that Alabama has a unique relationship with the field of Egyptology, like the close relationship between the plaintiff's profession and the forum state that the Supreme Court found relevant in *Calder*. Therefore, even if we assume Luban's statements were widely read by followers of the *sci.archaeology* newsgroup, the readers most likely would be spread all around the country—maybe even around the world—and not necessarily in the Alabama forum. The fact that messages posted to the newsgroup *could* have been read in Alabama, just as they *could* have been read anywhere in the world, cannot suffice to establish Alabama as the focal point of the defendant's conduct.

To support her assertion that Luban's statements affected her professional integrity in Alabama, Griffis relies on the message posted by a dean at the University of Alabama. But that message simply verified that Griffis had taught noncredit classes related to ancient Egypt at the University of Alabama's Department of Special Studies. The statement did not indicate an awareness of Luban's statements, nor did it indicate that Griffis's integrity or reputation had been impugned at the University. Significantly, the dean posted the message to another newsgroup because she did not have access to *sci.archaeology* newsgroup on which Luban

made her postings. Griffis later copied the Dean's message onto the *sci.archaeology* newsgroup. Thus nothing in the factual record before us indicates that Luban's messages were read by any other person in Alabama, or by anyone in the academic community at the University of Alabama. Griffis also relies on a letter her attorney wrote to Luban threatening litigation to establish that Luban knew her postings would harm Griffis's consulting business in Alabama. But the letter states only that Luban's statements were "threatening" Griffis's business and did not specify any details about the business. Nor does anything in the record establish that Griffis's consulting business was focused in Alabama, beyond the fact that Griffis herself was located there.[4] Unlike the facts in *Calder*, where the defamatory article was focused on California activities of a California plaintiff whose professional industry was centralized in California and was carried by a national newspaper with its highest circulation in California, Luban did not "expressly aim" her statements at the state of Alabama such that Alabama was the focal point of the tortious activity.

In sum, we conclude that the record does not demonstrate that Luban expressly aimed her allegedly tortious conduct at the Alabama forum so as to satisfy the third prong of the *Imo Industries* analysis. The mere fact that Luban knew that Griffis resided and worked in Alabama is not sufficient to extend personal jurisdiction over Luban in Alabama, because that knowledge does not demonstrate targeting of Alabama as the focal point of the allegedly defamatory statements. As a result, even if Luban knew or should have known that defamatory statements about Griffis

4. In fact, a copy of the website of the consulting business in the district court record identifies Griffis Consulting as "a U.S.-based consulting firm * * * involved in both domestic and international services to business, government, and other organizations." There is no mention of Alabama on the website, other than an ad from the hosting site.

would affect her in her home state of Alabama, that alone is not enough to demonstrate that Alabama was the focal point of Luban's tortious conduct. Failing this, Griffis cannot rely on *Calder* to confer personal jurisdiction based on Luban's allegedly intentional tortious conduct. Because Griffis does not claim any other basis on which the Alabama court could properly extend personal jurisdiction over Luban, the judgment of the Alabama court is not entitled to full faith and credit in Minnesota. The decisions of the courts below enforcing the Alabama judgment are therefore reversed, and the Alabama judgment filed in Ramsey County District Court on May 5, 1998, under the Uniform Enforcement of Foreign Judgments Acts, Minn.Stat. § 548.27, and the Ramsey County District Court judgment entered on December 21, 2000, based on the Alabama judgment, are vacated.

Reversed and judgments vacated.

GILBERT, J., took no part in the consideration or decision of this case.