*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1700**

Michael P. Schaefer, et al.,
Respondents,

vs.

Archdiocese of St. Paul and Minneapolis, et al.,
Defendants,

Roman Catholic Diocese of Orange Revocable Trust, et al.,
Appellants.

**Filed October 17, 2016
Reversed
Peterson, Judge**

Dakota County District Court
File No. 19HA-CV-15-1490

John D. Thompson, Oberman Thompson, LLC, Minneapolis, Minnesota (for respondents)

Paul J. Zech, Scott D. Blake, Felhaber Larson, Minneapolis, Minnesota (for appellants)

Considered and decided by Peterson, Presiding Judge; Hooten, Judge; and Muehlberg, Judge[*].

---

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**PETERSON**, Judge

Appellants challenge the district court's denial of their motion to dismiss respondents' claims against them for lack of personal jurisdiction. We reverse.

## FACTS

Respondent Michael P. Schaefer is a resident of Minnesota and the president and sole member of respondent MPSCHAEFER, LLC (the LLC), a Minnesota limited liability company. Schaefer was formerly the executive director of defendant Catholic Finance Corporation (CFC), a Minnesota nonprofit corporation, which provides financial services to defendant Archdiocese of St. Paul and Minneapolis, a Minnesota nonprofit corporation.

Appellants are the Roman Catholic Diocese of Orange, a California nonprofit corporation located in California; the Roman Catholic Diocese of Orange Revocable Trust (ORT), a trust located in California that was established for the benefit of Roman Catholic parishes, schools, and charitable organizations located in California; and Mater Dei High School, a Roman Catholic high school located in California. All of the appellants are exclusively located in California.

Schaefer is a financial advisor who specializes in organizational and financial management of Catholic organizations. Schaefer was the executive director of CFC when it provided financial services to Catholic organizations nationwide; as an employee of CFC, Schaefer provided advice to appellants.

In 2011, after CFC elected to serve only the Archdiocese of St. Paul and Minneapolis, Schaefer opened his own consulting practice, the LLC, and began providing

consulting services to appellant Diocese of Orange and its related entities. Schaefer regularly attended meetings of the Diocese of Orange's Budget and Financial Planning Committee. Later in 2011, the Diocese of Orange contracted with Schaefer to provide services to a number of Catholic schools in California. In 2013, the LLC began providing services to a number of unincorporated parishes in California; ORT entered into contracts with the LLC on behalf of these parishes. In each of the contracts, the LLC and ORT agreed that Minnesota law would govern. Approximately 80% of the work performed by the LLC for the California entities from 2011 through 2013 was performed in Minnesota.

In an affidavit, the Reverend Steve Sallot, Vicar General for the Diocese of Orange, stated that all of the contracts with the LLC were negotiated and signed in California; meetings of the Diocese of Orange's Budget and Financial Planning Committee, which Schaefer regularly attended, were always held in Orange County, California; and "[n]o employee or agent of the California [appellants] ever traveled to Minnesota in connection with the financial consulting services provided by [the LLC]."

Schaefer and Phil Ries, the director of finance of the Diocese of Orange, regularly attended the Diocesan Fiscal Managers Conference. According to Schaeffer, he and Ries spent some time talking about the needs of the Diocese and its affiliates at each of those conferences, which provided direction on active engagements and often led to additional work. In 2011, the conference was held in Minneapolis. This is the only time that any of appellants' employees visited Minnesota.

Ries planned to retire in 2013, and Schaefer was asked to work on an interim basis as the Diocese of Orange's director of finance, with a possible later expansion of duties.

3

The LLC and the Diocese of Orange entered into a written contract in November 2013, agreeing that Schaefer would act as interim director of finance. The contract provided that Minnesota law would govern. Schaefer actually began working as interim director in October 2013.

In December 2013, an employee of the Diocese of Orange made a complaint about Schaefer. While investigating the complaint, the Diocese of Orange contacted defendants Archdiocese of St. Paul and Minneapolis and CFC, which reported that Schaefer had engaged in sexual misconduct while employed there, although Schaefer contends that neither this allegation nor the allegation by the employee in California was true. Based on their investigation, appellants terminated all contracts and agreements that its employees, affiliates, or associated entities had with the LLC, rescinded all personal references and recommendations that had been provided for Schaefer, and refused to provide further personal references and recommendations.

Respondents sued appellants, alleging breach of contract, tortious interference with contract, tortious interference with prospective economic relations, unjust enrichment, and quantum meruit. Respondents also sued the defendants, alleging breach of contract, tortious interference with contract, tortious interference with prospective economic relations, and defamation. Defendants interposed an answer, and appellants moved under Minn. R. Civ. P. 12.02(b) to dismiss the complaint against them for lack of personal jurisdiction. After a hearing, the district court denied the motion to dismiss, and this appeal followed.

4

**DECISION**

A denial of a motion to dismiss for lack of personal jurisdiction is "immediately appealable." *Janssen v. Best & Flanagan, LLP*, 704 N.W.2d 759, 763 (Minn. 2005). Whether jurisdiction exists is a question of law, which we review de novo. *Volkman v. Hanover Invs., Inc.*, 843 N.W.2d 789, 794 (Minn. App. 2014). The plaintiff has the burden of demonstrating that a court has personal jurisdiction over a defendant, and that burden must be met by more than general averments or statements. *Id.* At the pretrial stage, the plaintiff's allegations and supporting evidence are accepted as true by the reviewing court. *Juelich v. Yamazaki Mazak Optonics Corp.*, 682 N.W.2d 565, 570 (Minn. 2004). In a close case, any doubt about whether a court has jurisdiction should be resolved in favor of retaining jurisdiction. *Hardrives, Inc. v. City of LaCrosse*, 307 Minn. 290, 296, 240 N.W.2d 814, 818 (1976).

In *Int'l Shoe Co. v. Washington*, the United States Supreme Court considered whether a state court could exercise jurisdiction over a nonresident corporation under the due-process requirements of the Fourteenth Amendment. 326 U.S. 310, 66 S. Ct. 154 (1945). The Supreme Court concluded that a state may exercise personal jurisdiction over a nonresident who had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* at 316, 66 S. Ct. at 158 (quotation omitted).

Minnesota's long-arm statute provides that Minnesota courts may exercise personal jurisdiction over any foreign corporation or any nonresident individual in the same manner as over a domestic corporation or resident individual

5

if, in person or through an agent, the foreign corporation or nonresident individual:

(1) owns, uses, or possesses any real or personal property situated in this state; or

(2) transacts any business within the state; or

(3) commits any act in Minnesota causing injury or property damage; or

(4) commits any act outside Minnesota causing injury or property damage in Minnesota, subject to the following exceptions when no jurisdiction shall be found:

(i) Minnesota has no substantial interest in providing a forum; or

ii) the burden placed on the defendant by being brought under the state's jurisdiction would violate fairness and substantial justice.

Minn. Stat. § 543.19, subd. 1 (2014). Minnesota courts may exercise jurisdiction under the long-arm statute if "exercise of such jurisdiction does not violate the due process requirement that the nonresident defendant have certain 'minimum contacts' with" Minnesota, or, stated otherwise, if federal constitutional requirements of due process are met. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 533 N.W.2d 25, 29 (Minn. 1995).

A court may exercise "general" jurisdiction over a defendant who has had "continuous and systematic contacts with the state." *Griffis v. Luban*, 646 N.W.2d 527, 532 (Minn. 2002) (quotation omitted). "Where the nonresident defendant's contacts with the forum state are not sufficient for general jurisdiction, the defendant may nonetheless be subject to 'specific' jurisdiction--that is, jurisdiction over a claim that allegedly arose out of the defendant's contacts with the forum." *Id.* In this case, respondents allege that their claims arose out of their contractual relationships with appellants, and we must consider whether appellants' contacts with Minnesota are sufficient to establish specific jurisdiction over appellants.

6

> In judging minimum contacts for purposes of assessing the validity of specific jurisdiction, a court focuses on the relationship among the defendant, the forum, and the litigation. For the minimum contacts requirement to be satisfied, the defendant must have purposefully availed herself of the privilege of conducting activities within the jurisdiction. The defendant's conduct and connections with the forum state must be such that the defendant should reasonably anticipate being haled into court there. . . .[S]pecific jurisdiction may be found where the nonresident defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities.

*Id.* (quotations and citations omitted).

But, "[f]or a [s]tate to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum [s]tate." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Physical presence in the forum state is not required, but "the relationship among the defendant, the forum, and the litigation" must arise out of contacts that the defendant creates with the forum state, not the defendant's contacts with persons who reside in the forum state. *Id*. at 1121-22 (quotations omitted).

A plaintiff's contract with an out-of-state defendant cannot automatically establish sufficient minimum contacts in the plaintiff's home forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985). Instead, the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." *Id*. at 479, 105 S. Ct. at 2185.

7

*Prior negotiations and contemplated future consequences*

Respondents' complaint and Schaefer's supporting affidavit include only a general averment that, "[i]n early 2013, [the LLC] entered into written contracts for [the LLC] to provide professional services to a number of parishes (unincorporated associations) within the Diocese of Orange." Respondents do not dispute that all of the contracts were negotiated and signed in California and that no employee or agent of appellants ever traveled to Minnesota in connection with the financial consulting services provided by the LLC. Respondents' only allegation that an employee or agent of appellants traveled to Minnesota was that Phil Ries attended a Diocesan Fiscal Managers Conference in Minneapolis in 2011. Schaefer stated in his affidavit that he and Ries regularly attended fiscal-managers conferences, and, at each conference, they spent some time talking about the needs of the Diocese. But Schaefer did not state that anything discussed at the 2011 conference was in any way connected to the contracts that the LLC entered into in 2013. Thus, there is no evidence that the relationship among appellants, Minnesota, and respondents' lawsuit arose out of Ries's visit to Minnesota in 2011 or that appellants had any other contact with Minnesota before entering into the contracts in 2013.

Schaefer also alleged that the parties contemplated a continuing relationship in which respondents would do additional work for affiliates of the Diocese and Schaefer would become the permanent director of finance and administration for the Diocese. The continuing relationship would lead to additional work, Schaefer explained, because "[e]mployment as a consultant in the Catholic Church, more so than other organizations, is highly dependent on personal references." The entities identified as affiliates of the

8

Diocese were all located in California, but personal references would be significant in all 50 states because Schaefer's consulting practice was national in scope.

*Terms of the contracts*

The record does not include copies of the contracts, but respondents alleged that each of the contracts provided that Minnesota law governs the contract and, under the contracts, respondents would provide professional services to appellants.

*Parties' actual course of dealing*

Respondents' complaint and Schaefer's supporting affidavit alleged only one contact between appellants and Minnesota during the parties' actual course of dealing under the contracts. Respondents alleged in their complaint that, after a Diocese employee made a complaint about Schaefer, "the Diocese of Orange contacted the Archdiocese of St. Paul and Minneapolis and/or CFC to investigate Schaefer." Schaefer made a similar allegation in his affidavit. Neither the complaint nor the affidavit indicated how this contact occurred, but both alleged that appellants terminated their contracts with respondents because of information communicated during the contact. In addition to this one contact, Schaefer stated in his affidavit that 80% of the work performed by the LLC for appellants from 2011 through 2013 was performed in Minnesota.

Accepting all of respondents' allegations and supporting evidence as true, we conclude that respondents did not meet their burden of demonstrating that appellants purposefully established minimum contacts with Minnesota. Although appellants entered into contracts with a Minnesota limited liability company, the contracts were negotiated and signed in California. There is no allegation that appellants initiated the negotiations or

9

sought out respondents in Minnesota, and there is no allegation that any representative of an appellant entered Minnesota in connection with the contracts.

Phil Ries, an employee of one of the appellants, entered Minnesota to attend a conference more than one year before any of the contracts were formed. During the conference, Ries spoke with Schaefer, but there is no allegation that Ries came to Minnesota for the purpose of speaking with Schaefer or that their conversation was related to the contracts in any way. The relationship among appellants, Minnesota, and this litigation did not arise out of Ries's attendance at the conference.

Nor did the parties' actual course of dealing demonstrate that appellants had minimum contacts with Minnesota. Under the contracts, respondents provided professional services to appellants. Although Schaefer stated in his affidavit that 80% of the work performed by the LLC for appellants from 2011 through 2013 was performed in Minnesota, appellants received the services in California. The actual course of the parties' dealings was that, while in California, appellants contracted to purchase professional services from a Minnesota limited liability company.

This court concluded in *Walker Mgmt., Inc. v. FHC Enters., Inc.*, that, for purposes of establishing personal jurisdiction, "[t]here is a distinct difference between purchasers of goods and services from Minnesota residents as opposed to sellers of goods and services to Minnesota residents." 446 N.W.2d 913, 915 (Minn. App. 1989), *review denied* (Minn. Dec. 15, 1989). One who sells services or goods to a Minnesota resident may reasonably expect to be "haled into court" in Minnesota to defend an action by a Minnesota resident, but a nonresident who purchases from a Minnesota resident services that are worked on in

10

Minnesota, but provided outside Minnesota, does not share that expectation. *See id.* at 915-16; *see also Dent-Air, Inc. v. Beech Mountain Air Serv., Inc.*, 332 N.W.2d 904, 907 (Minn. 1983) (stating that "[i]n reviewing the nature and quality of the contacts, we are attempting to ascertain whether the nonresidents purposefully availed themselves of the benefits and protections of Minnesota law") (quotation omitted)).

In *Walker*, FHC, an Illinois corporation, contracted with Walker Management, a Minnesota corporation, for consulting, marketing, and management services for a housing project in Illinois. 446 N.W.2d at 913. FHC had no offices, staff, or property in Minnesota. *Id.* at 914. It was not registered in Minnesota, filed no tax returns, and sent no representatives to Minnesota. *Id.*

Although "the marketing services were implemented in Illinois," Walker Management was based in Minnesota, did not have a marketing office in Illinois, and performed "a large portion of the work they completed for FHC . . . in Minnesota." *Id.* "There were numerous telephone conversations between representatives of FHC and Walker, in addition to correspondence, payments, and other documents which were sent by FHC from Illinois to Walker in Minnesota." *Id.* And, during the one and one-half years while the contract was in effect, "two representatives from FHC traveled to Minnesota to view Walker's operations, meet with Walker personnel, and tour Walker properties." *Id.* at 913-14. Also, some of the work was done by other Minnesota vendors who contracted with Walker Management. *Id.* at 914.

After FHC filed a breach-of-contract action in Illinois, Walker filed a breach-of-contract action in Minnesota. *Id.* FHC's motion to dismiss Walker's complaint for lack of

11

personal jurisdiction was denied, and this court reversed. *Id.* at 913. This court concluded that FHC's contacts with Minnesota were "so slight that FHC could not reasonably have expected to have been 'haled into court' in Minnesota to defend an action brought by the seller of services, particularly when all of Walker's services were to be performed in the Chicago area." *Id.* at 915.

This court's reasoning in *Walker* is consistent with the Supreme Court's analysis in *Walden*, which rejected the use of the *plaintiff's* contact with the forum state "to satisfy the defendant-focused minimum contacts inquiry." 134 S. Ct. at 1122 (quotation marks omitted). The Supreme Court explained in *Walden* that minimum-contacts analysis looks at the defendant's contacts with the forum state, not contacts with a state resident. *Id.* In this case, respondents performed work for appellants in Minnesota, but the work was implemented in California. With respect to this work, appellants had no contact with Minnesota, except for their contacts with Schaefer. Under *Walden* and *Walker*, Schaefer's contacts with Minnesota do not satisfy the defendant-focused minimum-contacts inquiry.

There are two significant differences between the facts in *Walker* and the facts in this case. Unlike the contracts in this case, which provide that they are governed by Minnesota law, the contract in *Walker* provided that it was to be governed by Illinois law, 446 N.W.2d at 913-14. And, unlike the decision to terminate the contracts in this case, which was based, in part, on information that appellants received during a single contact with Minnesota, the reason why the contract in *Walker* was terminated is not stated in the opinion. Neither of these differences leads to a different result in this case than in *Walker*.

12

The supreme court has determined that a contract clause calling for application of Minnesota law is not sufficient to confer personal jurisdiction. *Dent-Air, Inc.*, 332 N.W.2d at 908. As the supreme court explained in *Dent-Air*, if the parties had "wanted to ensure the use of Minnesota's courts in the event of breach of contract, they could have contractually consented to personal jurisdiction in Minnesota." *Id.* And the mere fact that information that appellants received during a single contact with Minnesota contributed to appellants' decision to terminate the contracts is not sufficient to confer personal jurisdiction. Appellants could not reasonably anticipate being haled into court in Minnesota because they made a single contact with Schaefer's previous employer in Minnesota while investigating a complaint made about Schaefer by an employee in California.

In addition to their contract claims, respondents alleged that appellants committed intentional torts. In *Griffis*, the Minnesota Supreme Court explained that the United States Supreme Court has "approved a test for determining personal jurisdiction over nonresident defendants who allegedly committed an intentional tort outside the forum." *Griffis*, 646 N.W.2d at 532. Citing *Calder v. Jones*, 465 U.S. 783, 787 & n.6, 104 S. Ct. 1482, 1485 & n.6 (1984), the Minnesota Supreme Court explained that "[r]ather than focusing only on the defendant's conduct within or contacts with the forum, the so-called 'effects test' approved in *Calder* allowed long-arm jurisdiction to be based on the effects within the forum of tortious conduct outside the forum." *Griffis*, 646 N.W.2d at 532. The supreme court explained further that the *Calder* test

13

> requires the plaintiff to show that: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm caused by that tort in the forum such that the forum state was the focal point of the plaintiff's injury; and (3) the defendant expressly aimed the tortious conduct at the forum such that the forum state was the focal point of the tortious activity. . . . [T]o satisfy the third prong, the plaintiff must show that the defendant knew that the plaintiff would suffer the brunt of the harm caused by the tortious conduct in the forum, and *point to specific activity indicating the defendant expressly aimed its tortious conduct at the forum.*

*Id.* at 534 (quotation and citation omitted). Foreseeability of injury in the forum is not enough, however, and something more than the defendant's knowledge that the plaintiff is a resident of the forum and will feel the effects of the tortious conduct there is necessary to satisfy the effects test. *Id.* at 534-35.

Respondents alleged tortious interference with contract and prospective economic relations, and, accepting these allegations as true, respondents demonstrated that appellants committed an intentional tort. But respondents' allegations do not demonstrate that Minnesota was the focal point of respondents' injuries or that appellants expressly aimed the tortious conduct at Minnesota. Respondents lost contracts with appellants, all of which were exclusively located in California. Respondents also lost personal references that could lead to work in the future. But Schaefer alleged that his consulting practice was national in scope and that the loss of references interfered with his business in all 50 states. Presumably, appellants' refusal to provide references could cause injury in Minnesota, but nothing indicates that appellants aimed their tortious conduct at Minnesota.

**Reversed.**

14